Art WAGNER, et al.

v.

**CENTRAL LOUISIANA ELECTRIC COMPANY, INC., et al.**

**Civ. A. No. 81–2112.**

United States District Court, E.D. Louisiana.

May 31, 1984.

Joseph Montgomery of Garner & Munoz, Arden Lea, New Orleans, La., for plaintiffs.

William O. Bonin of Landry, Watkins & Bonin, New Iberia, La., John Schwab of Schwab & Walter, Baton Rouge, La., France W. Watts, III, Franklinton, La., Rufus W. Oliver, III, Houston, Tex., for defendants.

## ORDER AND REASONS

CHARLES SWARTZ, Jr., District Judge.

This matter is before the Court on motion of plaintiffs to certify the proposed class pursuant to Rule 23(c)(1). The instant motion is the most recent of two attempts by plaintiffs, in which it has revised the definition of the class three times, to have this Court determine that this suit, brought under the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1 and 15, be maintained as a Rule 23(b)(3) class action. After conducting an evidentiary hearing on October 27, 1982, allowing plaintiff to amend the complaint to redefine the proposed class and to file two supplemental memoranda in support of class certification, the Court denied plaintiffs' first motion to certify on numerous grounds. See Order of August 26, 1983, reported as *Wagner v. Central Louisiana Electric Co., Inc.*, 99 F.R.D. 279 (E.D.La.1983).

Following the August 26, 1983 Order, plaintiffs moved this Court to reconsider its denial in light of newly discovered evidence, the rescission of various state utility regulations discussed in the Order, and the formulation of a new definition of the proposed class. At a November 23, 1983 hearing, the Court granted plaintiffs' motion to reconsider, but indicated that it would restrict its reconsideration to the proposed definition of the class set forth in plaintiffs' memorandum in support of reconsideration. The Court also stated that the opportunity afforded plaintiffs by its granting the motion to reconsider would be the *final* chance for them to meet the requirements of Rule 23. So that plaintiffs could take their "best shot" at satisfying Rule 23, the Court subsequently granted plaintiffs leave to amend the proposed definition of the class and to substitute named plaintiffs and proposed class representatives.[1] Following several delays resulting from schedule conflicts, the evidentiary hearing to consider the instant motion to certify the proposed class was held May 23, 1984.

■ The law governing class actions under Rule 23 is set out in the Court's previous Order, 99 F.R.D. 279. For the purposes of the instant motion, we need only consider the implied requirement that plaintiffs prove that a class exists. As stated therein, courts have not required that the class be so clearly ascertainable that every potential member can be readily identified at this stage of the litigation. *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir.1970). On the other hand, the class must be sufficiently defined so as to enable the court to determine whether a particular individual is a member of the class. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970). Ascertainment of class membership is essential in Rule 23(b)(3) actions to give class members the notice required by Rule 23(c)(2).

---

1. The proposed class definition, which is substantially different from the previously considered by the Court in its August 26, 1983 Order, is as follows: "Those past and present customers of Cleco who purchased electricity from Cleco during all or any part of the period between May 26, 1977 and May 26, 1981, 1) at a service location which is part of a development located in whole or in part in the geographical area depicted on the map attached hereto and made a part hereof, where the developer entered into a line extension agreement with Cleco between February 24, 1966 and May 26, 1981 for the extension of electrical service by Cleco to the development and which development was expected to encompass ten or more residences and/or commercial establishments as determined by the recorded approval of the parish or police jury for the undertaking of such development, and 2) to whose service location the Co-op would have extended service but for the antitrust violation based upon a finding that extension for service to the development of which the Cleco customer became a part would have improved the density along the line ratio of the Co-op at the time the developer applied for service to the service location".

■ The proposed class definition herein requires the Court to determine class membership by identifying those individuals who (1) received electric service from CLECO at some time from May 26, 1977 to May 26, 1981 while residing in a (2) subdivision located within the delineated geographical area and encompassing ten or more consumers; where (3) the developer entered into a line extension agreement with CLECO between February 26, 1966 and May 26, 1981; and which (4) the Co-op would have served but for the agreement in question based upon a finding that service of said subdivision would have improved the Co-op's "density along the line ratio". Plaintiffs failed to present data or other evidence necessary to apply the fourth factor, and thus have failed to prove at the outset the existence of the proposed class.

At the May 23, 1984 evidentiary hearing, plaintiffs presented evidence showing that each of the named plaintiffs, with the possible exception of Thomas Wagstaff, resided in subdivisions consisting of ten or more residences, which subdivisions are located within the delineated geographical area, and received electricity from CLECO during all or part of the specified period, May 26, 1977 to May 26, 1981. The subdivisions where the named plaintiffs reside include Holiday Acres, Eden Isles, North Wood Village, Magnolia Forest, Whisperwood, and Kingspoint. Plaintiffs' evidence also established that North Forest, Timberlake Estates, Hickory Hills, Hunter's Creek, and River View encompass ten or more residents and are located within the delineated geographical area. Further, from the plats submitted to the Parish of St. Tammany for each of the above-named subdivisions (Plaintiffs' Exhibit No. 2) and from the respective approval dates listed thereon,

the Court can reasonably infer that agreements extending electric service to the respective subdivisions were made within the specified time period, February 24, 1966 to May 26, 1981, although plaintiffs presented no direct evidence pertinent thereto.[2] Plaintiffs thus presented evidence applicable to the first three factors of their proposed class.

No evidence, however, was presented to show that any of the above-named subdivisions would have improved the Co-op's "density along the line ratio,"[3] and there is no evidence from which the Court could infer that the aforementioned subdivisions would satisfy the fourth criterion, and thus, that the Co-op would have served these subdivisions but for the agreement in question. To determine whether line density would have improved by serving a particular subdivision, one must know the distance the line would have been extended; the density of the line without the hypothetical extension at the time the subdivision was developed; and the additional population that would have been served if the extension had been made. Only evidence relevant to the additional population was provided. The Court did hear testimony from three local developers who supported the deposition testimony of Ford White by stating that they preferred to receive service from the Co-op rather than CLECO, primarily because the former did not charge the developer for underground service, whereas the latter did, and secondarily, because the Co-op's service rates were lower than CLECO's at the time. But this testimony is insufficient to establish that Co-op's line density would have improved if these subdivisions were served or that extension of service by the Co-op would have been economically feasible for the utility.[4]

---

2. Plaintiffs also submitted a plat for the Ravenwood subdivision, but failed to establish its location within the delineated geographical area.

3. Whether the line density criterion proposed by plaintiffs for determining the economic feasibility of a line extension is valid for such a determination is a question we need not reach for the purpose of this decision. We note that Louis S. Quinn discussed this factor with two

other interrelated factors—loading factor and excess generating capacity—which he also regarded as significant in determining the feasibility of a proposed extension. *See* Deposition of Quinn at pp. 44–45.

4. We further note that the developers addressed themselves to only three of the subdivisions that plaintiffs seek to have included in the proposed class.

**199**

Given the evidence presented, the Court cannot conclude that the proposed class, as defined by plaintiffs, exists.[5]

Considering the foregoing, the motion of plaintiffs to certify the proposed class is hereby DENIED. Since the Court finds that there exists common questions of law and fact, the named plaintiffs may proceed in one consolidated action.

Charles Sovel, Philadelphia, Pa., for plaintiff.

Nixon, Hargrave, Devans & Doyle, Rochester, N.Y. (Harold A. Kurland, Rochester, of counsel) for defendant.

5. Although our ruling does not require us to address the requirements of Rule 23(b)(3), we note that the need to make a separate calculation of the line density for each of the eleven subdivisions that would constitute plaintiffs' proposed class, and their various phases of de-velopment, which calculations would also bear directly on the issue of impact, suggests very strongly that classwide questions of fact would not predominate over questions relating to groups within the proposed class for determining both whether the class exists and impact.