Cassell **CARPENTER** et al., Plaintiffs-Appellants,

v.

Russell C. **DAVIS**, Mayor of Jackson, et al., Defendants-Appellees.
No. 27686.

United States Court of Appeals,
Fifth Circuit.
April 9, 1970.

Armand Derfner, James A. Lewis, Jackson, Miss., for appellants.

Thomas H. Watkins, E. W. Stennett, City Atty., Robert G. Nichols, Jr., Jackson, Miss., for appellees.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge:

Two named plaintiffs sued "as individuals and as representatives of all others who write for, publish, sell or distribute the Kudzu, or who wish or expect to in the future." The complaint described the Kudzu as a "periodical newspaper." The defendants are four officials of the City of Jackson, its Mayor, Police Justice, Prosecuting Attorney and Chief of Police.

The complaint alleged that each of the plaintiffs and several other members of the class had been arrested by police officers of the City of Jackson and charged with selling or distributing obscene literature consisting of particular words or passages in two issues of the Kudzu. It further alleged that the issues were not obscene, that irreparable injury would ensue to the plaintiffs and the class if they were prosecuted and convicted and that they faced "the choice

of surrendering their rights of free speech and free expression under the First Amendment to the Constitution of the United States or being prosecuted, convicted and imprisoned."

The complaint further alleged:

"Plaintiffs Carpenter and Doggett and the other members of the class are in possession of numerous copies of the issues alleged to be obscene and wish to sell these papers. They are threatened with prosecution if they attempt to sell, give away or otherwise distribute these papers, or even if they simply continue to possess these papers. In addition, they wish to prepare, publish, sell and distribute future issues of the Kudzu which may, for valid literary, artistic or journalistic reasons, contain the words alleged to be obscene or similar words. They face the threat of prosecution if they do so."

The complaint prayed (1) a declaratory judgment that the particular issues of Kudzu are not obscene; (2) a declaratory judgment that if the issues are obscene under the City ordinance, which adopted Section 2288 of the Mississippi Code of 1942,[1] such an application of the ordinance would be unconstitutional; and (3) injunctions against pending and threatened prosecutions for possessing, selling or distributing the particular issues or any future nonobscene (as determined by constitutional standards) issues of the Kudzu.

The defendants' answer being filed and the case being at issue, it was heard on its merits. The only evidence was the testimony of the plaintiff Carpenter and a stipulation of counsel that the statements numbered 1 through 9 appearing in defendants' exhibit D–1 are correct quotations from issue number 5 and issue number 6 of the Kudzu.[2]

The witness Carpenter testified that she was a staff member of the Kudzu, that she wrote for and distributed the newspaper "and do everything that is necessary." She identified a number of articles in the Kudzu which she had written, including an interview for which she was arrested on a charge of obscenity. She identified other issues of the newspaper which were marked for identification but which the district court declined to admit in evidence. The papers were sold at most of the high schools, junior high schools, and downtown to the public generally. The paper came out "about every three weeks," about 6000 copies of each issue were printed. "It's supposed to come out every two weeks, but we've had a lot of trouble." The first arrest was of two people for obstructing traffic and resisting arrest. The next day twelve people from the staff were arrested and charged with vagrancy. "We have a lot of people who distribute them for us, who sell down town all day and they sell quite a lot. I've just sold them when I would have a few minutes." (App. 52). About 3000 copies of issue number 5 are on hand and available for sale. Issue number 5 came out about three weeks before the hearing and issue number 6 the week before. Most of the copies of issue number 6 have been confiscated. "Practically every time we

---

1. "A person who sells, lends, gives away, or shows, or has in his possession with intent to sell or give away, or to show or advertise, or otherwise offers for loan, gift, sale, or distribution, any obscene or indecent book, writing, paper, picture, drawing, or photograph, or any article or instrument of indecent or immoral use, or who designs, copies, draws, photographs or otherwise prepares such a book, picture, drawing or other article, or writes or prints, or causes to be written or printed a circular, advertisement, or notice of any kind, or gives information orally, stating when, where, how, by whom, or by what means such an indecent or obscene article or thing can be purchased or obtained is guilty of a misdemeanor, and, on conviction, shall be punished by a fine of not over five hundred dollars or imprisonment in the county jail for not more than six months, or both."

2. Since the district court did not reach the issue of obscenity vel non, there is no occasion to set forth those statements in this opinion.

leave with any we get arrested." About 5000 copies of number 6 are on hand and available for sale. The newspaper is sold in other parts of Mississippi— on the coast, at Mississippi universities and colleges, and at high schools throughout the State. The paper subsists mostly on the sales of papers, she would estimate to the extent of about 65%, the remainder comes from contributions. Queried by the court as to who were the owners and operators of this newspaper, the witness said, "I suppose Cassell Carpenter, David Doggett, Everett Long and Mike Kennedy."

"Well, there are four permanent staff members. * * * There are also some other people here in Jackson who consider themselves staff members, for all practical purposes are staff members, and they can do business under Kudzu, do correspondence, and there are a group of people at Ole Miss, and there are a group of people at Mississippi State who are staff members and who can do business as Kudzu."

The witness considers the words used appropriate and not obscene, but is deterred from using some words that she might otherwise consider appropriate because "if we use some of the words * * *, we may end up in jail again."

On cross-examination Miss Cassell identified a number of the allegedly obscene statements; she admitted that the staff members were not listed on the paper by their actual names, but such fanciful names appeared as the two office dogs and a cat and "Uncle Bedford" for a boy from Ole Miss; that there are also listed some real names of people. The witness read some ten names.

As stated, the evidence consisted entirely of the stipulation, defendants' exhibit D–1, and Miss Cassell's testimony in connection with which issues 5 and 6 of the Kudzu were admitted in evidence. At the conclusion of the hearing the court took the case under advisement. Thereafter the court on its own motion ordered that

"this case cannot be maintained or treated as a class action under Civil Rule 23 * * *, but * * * can be maintained only by the real parties in interest under Civil Rule 17; and unless all of the editors and writers for the Kudzu paper be joined as plaintiffs * * * within ten days after this date that the suit in its entirety will be dismissed for lack of necessary parties. There shall be joined as plaintiffs under Civil Rule 17 each person as editor or writer who was responsible for each article appearing in the two editions of Kudzu in question, and the part and participation of each such person for editing or writing such articles shall be specifically stated for a proper assumption and assessment of responsibility therefor."

Instead of complying with that order, the plaintiffs amended their complaint by adding paragraph 3a, as follows:

"Plaintiffs Carpenter and Doggett are the chief executive, editorial, managerial and financial officers of the Kudzu and, as such, have over-all responsibility for the entire contents of each issue."

The court then entered an order dismissing the case at plaintiffs' cost. We hold that the case was properly brought both as an individual action and as a class action and therefore reverse.

### I.

The district court gave no adequate reason why the two named plaintiffs could not prosecute the action individually on their own behalf without *joining all other editors and writers for* Kudzu. The appellees suggest that other staff members had interests which were inseparable from those of the plaintiffs and "whose rights might necessarily be affected" within the rule of Shields v. Barrow, 1854, 58 U.S. 130, 15 L.Ed. 158. We do not agree with the suggestion, and we may also note that it is not broad enough to justify the court's order requiring the joinder of "all of the

editors and writers for the Kudzu paper."

Clearly the two named plaintiffs were real parties in interest—they had been arrested and threatened with further arrests and sought to vindicate their First Amendment rights. As real parties in interest the two named plaintiffs should have been permitted to maintain their individual action. Rule 19, Fed.R.Civ.P., does not require the joinder of any other party.

## II.

■ We think also that this case meets all of the requirements of a class action under the present Rule 23, Fed. R.Civ.P. The appellees argue that (1) the number of persons involved are not so large as to make joinder impracticable, and (2) the members of the class are not capable of definite identification.

The prerequisites to a class action specified in Rule 23(a) were clearly met. The class is not confined to the few owners or staff members, as the appellees assume, but extends to all who write for, publish, sell or distribute the Kudzu, or who wish or expect to do so in the future. The record is ample to show numerous such people in existence, as well as the probability of others who may become members of the class in the future. See Cypress v. Newport News General and Nonsectarian Hospital Ass'n, 4 Cir., 1967, 375 F.2d 648, 653 n. 9; 3B Moore's Federal Practice ¶ 23.05 at 23–276 and 23–277.

■ It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained. The present class action qualifies most typically under subdivision (b)(2) of Rule 23, Fed.R.Civ.P.:

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; * * *."

The Notes of the Advisory Committee on Rules as to subdivision (b)(2) collect many pertinent cases in support of its statement that

"Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. See Potts v. Flax, 313 F.2d 284 (5th Cir. 1963); Bailey v. Patterson, 323 F.2d 201 (5th Cir. 1963), cert. denied, [City of Jackson v. Bailey] 376 U.S. 910, [84 S.Ct. 666, 11 L.Ed.2d 609] (1964); Brunson v. Board of Trustees of School District No. 1, Clarendon Cty, S.C., 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933 [, 83 S.Ct. 1538, 10 L.Ed.2d 690] (1963); Green v. School Bd. of Roanoke, Va., 304 F.2d 118 (4th Cir. 1962); Orleans Parish School Bd. v. Bush, 242 F.2d 156 (5th Cir. 1957), cert. denied, 354 U.S. 921 [, 77 S.Ct. 1380, 1 L.Ed.2d 1436] (1957); Mannings v. Board of Public Inst. of Hillsborough County, Fla., 277 F.2d 370 (5th Cir. 1960); Northcross v. Board of Ed. of City of Memphis, 302 F.2d 818 (6th Cir. 1962), cert. denied, 370 U.S. 944, [82 S.Ct. 1586, 8 L.Ed. 2d 810] (1962); Frasier v. Board of Trustees of Univ. of N.C., 134 F.Supp. 589 (M.D.N.C.1955, 3-judge court), aff'd, 350 U.S. 979, [76 S.Ct. 467, 100 L.Ed. 848] (1956)."

Rule 23(b)(2), 28 U.S.C.A. (Supp.1969)

The district court erred in dismissing the action. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.