**INTRATEX GAS COMPANY, Appellant,**

v.

**Richard BEESON; Eclipse Oil & Gas, Inc.; and O'Neill Properties, Ltd.; et al.; For Themselves and all others Similarly Situated, Appellees.**

**No. 01–96–01173–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 15, 1998.

---

Carrin G. Patman, Jim Flegle, J. Clifford Gunter, III, Houston, for Appellant.

Ronald D. Krist, Herbert T. Schwartz, Houston, for Appellees.

Before ANDELL, MIRABAL and HEDGES, JJ.

## OPINION

ANDELL, Justice.

This is an appeal from an interlocutory

order[1] certifying a class action under Tex.R. Civ. P. 42. We affirm.

Richard Beeson, Eclipse Oil & Gas, Inc. (Eclipse), and O'Neill Properties, Ltd. (O'Neill) (collectively Plaintiffs) brought the underlying lawsuit on behalf of a "class of persons who, at any given time from 1978 to the present, have held overriding royalty interests or working interests in natural gas producing properties on which the production was dedicated to or purchased by" Intratex Gas Company. Plaintiffs allege Intratex did not purchase natural gas in ratable proportions from the wells of more than 900 producers. Plaintiffs asserted violation of Texas statutory law and the Texas Railroad Commission regulations, breach of contract, intentional and/or negligent misrepresentation, and fraud. The trial court granted Plaintiffs' motion to certify only on the issue of whether Intratex took ratably from the class members. Certification as to all other issues and claims was denied. Intratex brings this appeal on three points of error, asserting that Plaintiffs did not meet any of the requirements of Tex.R. Civ. P. 42.

■ We review the trial court's determination that this case should proceed as a class action using an abuse-of-discretion standard. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996); *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 839 (Tex.App.—Houston [14th Dist.] 1996, no writ). We will not substitute our judgment for that of the trial court, but will only determine whether the trial court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). We view the evidence in a light most favorable to the trial court's action, and indulge every presumption favorable to the trial court's action. *Kirkland*, 917 S.W.2d at 839; *Dresser*, 847 S.W.2d at 371–72.

### RULE 42 CLASS ACTIONS

■ There is no automatic right to maintain a lawsuit as a class action. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642,

647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). Instead, a trial court *may* certify a class action if the class proponent satisfies all four requirements of Tex.R. Civ. P. 42(a), and at least one of the requirements under Tex.R. Civ. P. 42(b). *Kirkland*, 917 S.W.2d at 839; *Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 770 (Tex.App.—Fort Worth 1986, no writ). Although plaintiffs must do more than merely allege they fulfill the requirements of rule 42, and they must show at least some facts to support certification, they are not required to prove a *prima facie* case or make an extensive evidentiary showing in support of a motion for class certification. *Weatherly*, 905 S.W.2d at 647.

■ Trial courts enjoy a wide range of discretion in determining whether to maintain a lawsuit as a class action, but may not consider the substantive merits of the class claims in making such a determination. *Dresser*, 847 S.W.2d at 371, 375. Certification is not irreversible, and the trial court may alter, amend, or withdraw class certification at any time before final judgment. *Morgan v. Deere Credit, Inc.*, 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ); Tex.R. Civ. P. 42(c)(1). Therefore, when a trial court makes a determination of class status at an early stage in the litigation before supporting facts are fully developed, it should favor maintenance of a class action. *Morgan*, 889 S.W.2d at 365.

■ As a preliminary matter, Intratex asserts that a viable cause of action is a prerequisite to an ascertainable class. Intratex contends that no private cause of action exists for violation of the Texas Common Purchasers Act, Tex. Nat. Res.Code Ann. §§ 111.081—111.097 (Vernon 1993), and the implementing regulations of the Railroad Commission. Intratex relies upon *Sowell v. Northwest Central Pipeline Corp.*, 703 F.Supp. 575, 580 (N.D.Tex.1988), which held that the Act did not provide a private cause of action for violation of Tex. Nat. Res.Code Ann. § 111.081. Intratex argues that because Plaintiffs have no cause of action

1. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(3) (Vernon Supp.1998).

against it, an ascertainable class does not exist.

If Intratex believes Plaintiffs have no recognizable cause of action to assert, it should refer to the Texas Rules of Civil Procedure for the proper mechanisms to resolve that issue. *Weatherly,* 905 S.W.2d at 649, n. 3; *Employers Cas. Co. v. Texas Ass'n of School Bds. Workers' Comp. Self–Insurance Fund,* 886 S.W.2d 470, 476–77 (Tex.App.—Austin 1994, writ dism'd w.o.j.). The use of special exceptions and summary judgment are more appropriate procedures for determining whether Plaintiffs have stated a cause of action. *Weatherly,* 905 S.W.2d at 649, n. 3; *Employers Cas.,* 886 S.W.2d at 477; Tex.R. Civ. P. 91, 166a. Decertification, however, is not the appropriate procedural tool. *Employers Cas.,* 886 S.W.2d at 477.

## CLASS DEFINITION

■ Implicit in rule 42 is the requirement that the court first determine whether there is an identifiable class. *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 63 (D.Nev. 1985); *Vietnam Vet. Against the War v. Benecke,* 63 F.R.D. 675, 679 (W.D.Mo.1974).[2] Here, the class is defined as: "All persons who were producers of natural gas sold to the defendant between January 1, 1978 and December 31, 1988 whose natural gas was taken by the defendant in quantities less than their ratable proportions." In point of error one, Intratex asserts the trial court erred in granting certification because the definition requires an improper conclusion on the merits of Plaintiffs' claims, is vague, and does not constitute an ascertainable class.

■ A class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *Kirkland,* 917 S.W.2d at 840; *Ladd v. Dairyland Cnty. Mut. Ins. Co. of Texas,* 96 F.R.D. 335, 338 (N.D.Tex.1982).

For a class to be sufficiently definite, the identity of the class members must be ascertainable by reference to objective criteria. *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D.Ill.1987). But the class does not need to be so definite that every potential member can be identified at the commencement of the action. *Carpenter v. Davis,* 424 F.2d 257, 260 (5th Cir.1970); *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 382 (D.Colo.1993). As long as the general outlines of class membership are determinable at the outset of the litigation, a class will be deemed to exist. *Cook,* 151 F.R.D. at 382; *Rutherford v. United States,* 429 F.Supp. 506, 508–509 (W.D.Okla.1977).

Intratex argues that the identity of the class members cannot be ascertained without addressing the central issue in the case: from which wells, if any, did Intratex take quantities in less than their ratable proportions. Intratex also attacks the methodology used by Plaintiffs' expert, Don Rhodes, to prepare a study from which Plaintiffs propose to identify the class membership. In fact, both parties submitted extensive testimony and a great deal of the almost-three-day hearing was spent on arguments over Rhodes's study.[3] Plaintiffs focused on the fact of the undertaking only, while Intratex focused on the "whys" and "hows" of the undertaking. All the criticisms raised by Intratex regarding the study are merits issues. The validity of Plaintiffs' study, whether Intratex undertook due to some reason beyond its control, or whether some producers were both undertaken and overtaken are all issues to be decided at a trial on the merits. Although it is possible these questions might defeat certification under one or more of the rule 42 factors, for the purpose of *defining* the class, these issues should not defeat certification at this stage. It is the *act* of not taking ratably, and not the reasons for the undertaking or whether there is proof

---

**2.** Because Tex.R. Civ. P. 42 is patterned after Fed.R.Civ,P. 23 (the federal class action rule), federal decisions are persuasive in interpreting rule 42. *Employers Cas.,* 886 S.W.2d at 473, n. 4; *Brister,* 722 S.W.2d at 770.

**3.** A trial court may base its decision on the pleadings and other materials. *Weatherly,* 905

S.W.2d at 647; *Employers Cas.,* 886 S.W.2d at 474. As long as the certification order was based upon that material, the trial court's decision cannot be faulted because Plaintiffs' proof may ultimately fail. *Dresser,* 847 S.W.2d at 376; *Brister,* 722 S.W.2d at 772–73.

of a compensable injury, that is important. The court properly defined the class with reference to the objective conduct of Intratex. *Bloyed,* 916 S.W.2d at 951; *Covelo Indian Community v. Watt,* 551 F.Supp. 366, 376 (D.D.C.1982).

Intratex also alleges the definition is vague and amorphous because there is no way, at this preliminary stage, to identify the producers whose natural gas was taken by Intratex in quantities less than their ratable proportions. But Intratex does not dispute that the identity of the producers can be obtained from its own records and from the Texas Railroad Commission records. If Intratex is correct, the class can always later be decertified or the class definition modified. Based upon the allegations and material presented by Plaintiffs at the certification hearing, the trial court did not abuse its discretion in defining the class as it did.

We overrule the first point of error.

### RULE 42(A): PREREQUISITES TO A CLASS ACTION

In point of error two, Intratex asserts that Plaintiffs did not meet any of the four requirements of rule 42(a), which are: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) "the representative parties will fairly and adequately protect the interests of the class." TEX.R. CIV. P. 42(a)(1), (2), (3), & (4).

#### 1. The "Numerosity" Requirement

Plaintiffs assert the class numbers approximately 983 potential class members.[4] Intratex contends the numerosity requirement is not satisfied because Plaintiffs did not show that joinder was impractical or would work a hardship on the prospective Plaintiffs. Intratex asserts only 76 people have expressed an interest in joining the suit.

The determination of whether the numerosity requirement is met is not based on numbers alone. *Phillips v. Joint Legis. Com. on Perf. & Expenditure Rev.,* 637 F.2d 1014, 1022 (5th Cir.1981) (considering class of at least 33 members, the court noted that the "proper focus is . . . on whether joinder of all members is practicable in view of the numerosity of the class and other relevant factors."). Although the trial court must find that joinder is impractical, there "is no mechanical rule for determining when class size reaches that threshold." *Employers Cas.,* 886 S.W.2d at 474. "The test is whether joinder of all members is practicable in view of the size of the class and such factors as judicial economy, the nature of the action, geographical locations of class members, and the likelihood that class members would be unable to prosecute individual lawsuits." *Weatherly,* 905 S.W.2d at 653.

Intratex argues that for two years the existence of Plaintiffs' claims and the telephone number of Plaintiffs' law firm were widely disseminated throughout west Texas. Yet, according to Intratex, only 76 people expressed an interest in joining the lawsuit. From this, Intratex concludes that Plaintiffs seek class certification to embroil those who are not particularly interested in pursuing these claims.

Intratex's argument is similar to the one asserted in *Weatherly.* In that case, the class opponents argued the trial court could not reasonably have concluded that joinder was impractical because only three plaintiffs had thus far sought to litigate their claim. 905 S.W.2d at 654. The Fourteenth Court of Appeals disagreed, stating that:

[T]here is no presumption, as appellees suggest, that other class members have chosen not to pursue their claims simply because they have not filed suit or intervened in the proposed class action. Indeed, class certification will enable appellants to provide the necessary notice. If

---

4. Plaintiffs' expert testified that he looked at approximately 2,200 wells on Intratex's pipeline for which Intratex was the first or common purchaser. He explained his methodology and how he concluded that, of the 2,200 wells, approximately 983 were "undertaken" or not taken "ratably."

He stated that, although his information was incomplete and he was still getting data from Intratex, it would be possible to determine for each class member the quantity of gas that member was not able to produce because Intratex did not take ratably.

after receiving notice other class members express a desire not to pursue this litigation, the trial court can decertify the class. *Id.* (citations omitted).

Here, given the number of potential class members, the trial court did not abuse its discretion in determining that the proposed class was so numerous that joinder of absent class members would be impractical. *See also Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 601 (Tex.App.—Houston [1st Dist.] 1991, no writ) (holding that 76 potential defendants was a sufficient number to meet the numerosity requirement); *Phillips,* 637 F.2d at 1022 (certifying class with at least 33 members).

**2. The "Commonality" Requirement**

The threshold of "commonality" is not high. *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). It is a qualitative test, not quantitative; and a single issue common to all class members may be sufficient. *Health & Tennis Corp. v. Jackson,* 928 S.W.2d 583, 590 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *In re Telectronics Pacing Sys., Inc.,* 168 F.R.D. 203, 213 (S.D.Ohio 1996); *Pottinger v. City of Miami,* 720 F.Supp. 955, 958 (S.D.Fla.1989). Intratex contends there are no questions of law or fact common to the purported class. Instead, Intratex alleges that "fact-specific mini-trials" will be required because the certified issue must be answered on an individual plaintiff-by-plaintiff basis.

Resolution of common issues need not guarantee a conclusive finding on liability. *In re School Asbestos Lit.,* 789 F.2d 996, 1010 (3rd Cir.1986). The existence of some factual variation among class members' grievances will not defeat certification. *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988); *Elliott v. ITT Corp.,* 150 F.R.D. 569, 577 (N.D.Ill.1992); *Pottinger,* 720 F.Supp. at 958. Nor does the commonality requirement mean that all questions or even most of the questions be identical. Rather, an issue of fact or law must exist that inheres in the complaints of all class members. *Dresser,* 847 S.W.2d at 372.

The trial court certified the class as to a single issue: "whether Intratex took ratably from the class members." The court found that "[a]n adjudication of the issue of whether Intratex took ratably from the class members would be dispositive as to such issue as to all members of the class." Intratex argues that the commonality requirement is not met because answering the question of whether it undertook from one class member does not answer that question as to all class members. Although Intratex's argument may have some merit, it is possible the court was actually thinking in terms of a "common course of conduct" when it made this finding. Plaintiffs allege Intratex engaged in the following common course of conduct:

Beginning in 1978, Intratex sold or "waived" some portion of its proportionate share of gas to Dow Chemical. Under these "waiver programs," Intratex identified and selected all of the specific wells to be part of the programs. These wells were selected due to their ability to produce gas in large quantities, but they all shared the common attribute of a weighed average cost of gas ("wacog") far below the then-current spot market price and the system-wide wacog. The "waiver program" identified the wells, identified production fields, and set out a pricing formula such that whenever Intratex elected to waive its proportion of gas to Dow, the price to be paid by Dow was readily calculable. The waiver agreements constitute a downstream sale of gas from Intratex to Dow. As such, these sales represent an increase in Intratex's market demand, which the ratability rules require to be spread ratably throughout the system and all producers. The waiver fields were nominated by Intratex much higher than the non-waiver wells, and permit higher, non-ratable production by Intratex from the waiver wells where the weighted average cost of gas was far below the market price or the system-wide price. Waiver wells were produced at high non-ratable volumes rather than spreading those takes system-wide on a ratable basis. Each producer and/or owner of a non-waiver well was thus deprived of their ratable share of this production.

In addition to the Dow waiver scheme, Intratex implemented other practices that resulted in its unratable taking of gas. For example, Intratex would increase the takes from a well immediately after exercising a price redetermination downward for the gas purchased from that well. As a result, as Intratex tried to force the prices lower it would increase the takes in some wells to the detriment of other wells where the price had not yet been redetermined.

Intratex's common course of conduct toward Plaintiffs provides a common nucleus of facts sufficient to satisfy the commonality requirement. *Gomez,* 117 F.R.D. at 399; *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 641 (D.Colo.1986); *Hagen,* 108 F.R.D. at 64.

The commonality question also is satisfied because rule 42 allows the court to certify a class with respect to "particular issues." TEX.R. CIV. P. 42(d)(1); *see also Microsoft Corp. v. Manning,* 914 S.W.2d 602, 610–11 (Tex.App.—Texarkana 1995, writ dism'd) (court limited certified issues to those for economic damages only, and excluded issues relating to consequential damages for data loss); *Franklin v. Donoho,* 774 S.W.2d 308, 313 (Tex.App.—Austin 1989, no writ) (certification proper even though plaintiffs would be required to litigate many disputed issues in a later adversary proceeding); *Telectronics,* 168 F.R.D. at 220 (certifying issue of liability only; class members could later, in a separate trial, establish whether they suffered injury and proper amount of damages). It is unclear from the court's order and from the record what the court intended by certifying the class "only on the issue of whether Intratex took ratably." However, in applying rule 42(d) and in view of the possibilities left open to the court under the applicable law, even if the evidence shows the existence of individual issues, it was not an abuse of discretion for the court to find that a common question of law or fact existed.

### 3. The "Typicality" Requirement

██ Intratex asserts that the claims of the purported class representatives (Beeson, Eclipse, and O'Neill) are not typical of the class claims. Intratex also contends that because so many individual questions inhere to the certified issue, it is impossible for Plaintiffs to ever find a "typical" class representative.

Intratex notes that Beeson and Eclipse did not acquire the interests on which they are suing until 1993 and 1995, when they purchased assignments of the interests several years after the alleged wrongdoing occurred. Therefore, Intratex asserts that Beeson and Eclipse do not belong in this class. Intratex also alleges O'Neill's wells were overtaken, and O'Neill was unable to deliver gas to Intratex because of a "balancing agreement" with Exxon that prohibited it from delivering ratable quantities of gas even though Intratex requested that it do so. Thus, Intratex concludes, O'Neill's claims are either in direct conflict with other class members or any nonratability with respect to O'Neill's wells was due to its own actions.

██ The requirement that the claims or defenses of the representatives be typical of those of the class members does not require that the claims or defenses be identical. *Employers Cas.,* 886 S.W.2d at 475; *Dresser,* 847 S.W.2d at 372; *Chevron U.S.A., Inc. v. Kennedy,* 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). All that is required is that a nexus exist between the injury suffered by the representative(s) and the injuries suffered by other members of the class. *Dresser,* 847 S.W.2d at 372. The claims need only be substantially similar. *Chevron,* 808 S.W.2d at 162.

Here, the representatives' claims stem from the same alleged practice and course of conduct that form the basis of the class claims, and the claims of all class members are based on the same legal theory: monetary injury from a common and consistent course of business conduct. The common thread that runs through every claim is Intratex's alleged failure to take ratably. Therefore, the trial court did not abuse its discretion in finding that the claims of Beeson, Eclipse, and O'Neill are typical of the class claims.

### 4. The "Adequacy of Representation" Requirement

 Intratex contends the purported class representatives cannot adequately protect the class interests. The adequacy of representation requirement actually consists of two elements: (1) it must appear that the representatives, through their attorneys, will vigorously prosecute the class claims; and (2) there must be an absence of antagonism or conflict between the interests of the representatives and the other members of the class. *Kirkland,* 917 S.W.2d at 844; *Weatherly,* 905 S.W.2d at 651. Further, class counsel's qualifications and experience is of greater consequence than the knowledge of the class representatives. *Weatherly,* 905 S.W.2d at 652.

Intratex does not dispute the competence of Plaintiffs' counsel. Instead, it asserts that Beeson, Eclipse, and O'Neill are inadequate as class representatives because of a failure to keep abreast of developments in the lawsuit, and a lack of personal knowledge about and dedication to the claims asserted. However, the record demonstrates that the class representatives displayed sufficient knowledge of the nature of their claims as well as their duties as class representatives.

 Intratex also contends Beeson, Eclipse, and O'Neill are inadequate as class representatives because their interests conflict with the interests of the other class members. Such conflicts are speculative at best and are insufficient to show the trial court abused its discretion in finding adequacy of representation. *Employers Cas.,* 886 S.W.2d at 476. "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dresser,* 847 S.W.2d at 373.

The trial court did not abuse its discretion in determining that "[t]he named plaintiffs and the attorneys bringing this action on their behalf and on behalf of the class are adequate to represent the interests of the class."

We overrule the second point of error.

### RULE 42(B)(4): CLASS MAINTENANCE

In its third point of error, Intratex contends the trial court abused its discretion in certifying the class because Plaintiffs failed to satisfy the requirements of rule 42(b)(4). Rule 42(b)(4) requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX.R. CIV. P. 42(b)(4).

 Intratex first asserts that individual questions predominate over the certified issue. The test for predominance is not whether the common issues out number the individual issues, but whether the common issues will be the object of most of the efforts of the court and litigants. *Health & Tennis,* 928 S.W.2d at 590; *Kirkland,* 917 S.W.2d at 842. There must be a central focus or a link between all class members and the defendant for which the law provides a remedy. *Scholes v. Tomlinson,* 145 F.R.D. 485, 484–85 (N.D.Ill.1992). Therefore, the trial court must first identify the substantive issues of law that will control the outcome of the litigation. *Brister,* 722 S.W.2d at 772. However, the purpose of this inquiry is to determine whether the character and nature of the case satisfies the requirements of the class action procedural rules, not to weigh the substantive merits of each class member's claim. *Id.* Further, even where it is not conclusively established that common issues predominate, the most efficient approach is to certify the class, and, if necessary after the case has developed, to dissolve the class or certify subclasses if common questions will not predominate at trial. *Health & Tennis,* 928 S.W.2d at 590; *Dresser,* 847 S.W.2d at 375; *Brister,* 722 S.W.2d at 775.

Intratex argues that the determination of whether it took ratably with respect to a given class member in a given month involves numerous inherently individual determinations, such as: (1) whether each alleged incident of undertaking resulted from the actions of the class member itself, its operator, physical factors, or some other third party over whom neither Intratex nor the class member had control; (2) interest owners in "undertaken" wells might be interest owners in "overtaken" wells, therefore, differences exist among each individual well and

with respect to each class member's overall interest in all of its wells; (3) operators (not Intratex) are responsible for allocating Intratex's "take" to wells behind a common meter point, therefore, an inquiry into why production was allocated a certain way behind that common point is necessary; (4) whether a purchase was at the wellhead or at the plant tailgate; (5) whether the wellstream contained hydrocarbon gases; and (6) whether the well sold to a special marketing program set up by Intratex.

Plaintiffs' expert testified that he did not consider many of these so-called "individual issues" because they did not impact on whether Intratex took ratably from class members. Intratex's argument ignores the fact that resolution of whether it engaged in a common course of conduct with respect to the class members will substantially advance resolution of this lawsuit. Also, whether, and to what extent, the various issues raised by Intratex bear on the certified question may in itself be a common question to be determined at trial. Consequently, the predominance requirement is satisfied.

 Intratex also asserts that a class action is not superior to other methods of adjudication. A class action is the superior method of adjudication when the benefits of classwide resolution of common issues outweighs any difficulties that may arise in the management of the class. *Weatherly*, 905 S.W.2d at 654. The trial court should consider alternative procedures for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members involved in pursuing the class action. *Brister*, 722 S.W.2d at 772. The court may consider whether: (1) class members have an interest in resolving the common issues by class action; (2) class members will benefit from discovery already commenced; and (3) the court has invested time and effort in familiarizing itself with the issues in dispute. *Weatherly* 905 S.W.2d at 654.

The trial court determined that "[c]lass representation is superior to other methods for the fair and efficient adjudication of the issue of whether Intratex took ratably from the class members." The court also found

that "[t]he class and the instant action are manageable subject to the supervision of the Court and class counsel." The record reflects that discovery has commenced, in the form of interrogatories and depositions. Experts on the issue of ratable taking by Intratex have been retained by both sides. Other class members who wish to join the class will benefit from the time and effort invested thus far by the trial court and the parties. The separate litigation of over 900 claims would be inefficient, costly, and a waste of judicial resources. Accordingly, a class action is superior to other methods of adjudication.

We overrule the third point of error.

We affirm the trial court's judgment.

HEDGES, J., dissenting.

HEDGES, Justice, dissenting.

I respectfully dissent. I believe that the trial court's definition of the class is improper because it requires an inappropriate determination of the merits of the cause of action itself. A trial court cannot consider the merits of a plaintiff's claims at certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). A definition of a class based on a legal conclusion dictates that "the court would have to pass on the merits of the claim at the class certification stage in order to tell who was included in the class." *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D.Nev.1985).

The trial court approved the following definition of the class: "All persons who were producers of natural gas sold to [Intratex] between January 1, 1978 and December 31, 1988 whose gas was taken by [Intratex] in quantities less than their ratable proportions." This definition requires a finding of wrongdoing in order to constitute the class.

Under this definition, once the plaintiffs determine the members of the class, they have already identified those who have been harmed and have excluded all others. I believe that the concept of ratability, as used by the plaintiffs, subsumes the notion of dis-

crimination, such that the unlawful conduct is predetermined.

Rule 34 of the Statewide Conservation Rules of the Texas Railroad Commission (known as the Market Demand Rule) states: "A first purchaser shall not discriminate between different wells from which it purchases in the same field, nor shall it discriminate unjustly or unreasonably between separate fields." This rule equates discrimination with failure to take ratably. Under the trial court's class definition, becoming a class member means that liability is automatically established.

I have found no cases in which a definition of a class was approved when this particular issue was in question. I have found three cases in which definitions have been rejected because they required a determination on the merits in order to establish class membership.

In *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D.Pa.1995), a plaintiff sued for money damages and sought to enjoin Data Transfer from sending any further unsolicited advertisements by way of fax machine in violation of the Telephone Consumer Protection Act. He petitioned to certify a class consisting of "all residents and businesses who have received unsolicited facsimile advertisements since January 1, 1992 from Data Transfer, Inc." *Id.* at 402. The court rejected the class definition on the basis that identifying those who received unsolicited facsimile advertisements "requires addressing the central issue of liability to be decided in the case. Determining a membership in the class would essentially require a mini-hearing on the merits of each case." *Id.* at 403.

In *Hagen v. City of Winnemucca,* the plaintiff sought certification of a class consisting of all persons whose constitutional rights had been violated by the defendant city's policies regarding prostitution during the previous four years. The court rejected the definition as insufficient because "it would require the court to determine whether a person's constitutional rights had actually been violated in order to determine that person was a class member." *Id.* at 63. The court validated "a much more precise and acceptable definition" that would avoid inquiry into the merits of the claim: "[a]ll persons who held police department work permits as prostitutes in the City of Winnemucca from May 18, 1981 to May 18, 1984." *Id.* at 64.

In *Metcalf v. Edelman,* 64 F.R.D. 407 (N.D.Ill.1974), the plaintiffs were public aid recipients who alleged that they could not obtain adequate housing under the existing state welfare system. The court rejected all attempts to certify a class, citing the futility of properly defining membership with the following unacceptable examples:

(1) those public aid recipients who are unable to obtain housing compatible with health and well-being with the allowance provided by defendant;

(2) those who, because of the size of their families and where they live, cannot obtain required housing with the portion of the Consolidated Standard Plan calculated to meet shelter costs;

(3) those who did not obtain shelter exceptions they should have had prior to the inception of the Consolidated Standard Plan, and also those for whom the Consolidated Standard Plan shelter component is inadequate; and

(4) those who should have had rent exceptions subsequent to the inauguration of the Consolidated Standard Plan.

*Id.* at 409.

The court criticized these definitions on the following basis:

Each definition proffered by plaintiffs calls for a conclusion, *e.g.*, who were the recipients who could not obtain housing compatible with health and well-being, who should have had shelter exceptions, etc. Before an adequate determination can be made of who is a class member, this court would be required to make an adjudication that a particular class member was denied a livelihood consistent with health and well-being because such plaintiff was not granted a shelter exception.

*Id.*

In this case, by approving the trial court's definition, the trial court and the majority have relieved the plaintiffs from proving lia-

bility. By virtue of their expert's testimony concerning which wells were not taken ratably, the plaintiffs establish their prima facie case, and the burden shifts to Intratex to defend itself. This adjudication is premature: liability is an issue that must be decided at trial, not during class certification.

Accordingly, I would reverse the order of the trial court.