TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00083-CV







Tana Oil and Gas Corporation and Teco Gas Marketing Company, Appellants



v.



Garth C. Bates, Appellee







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 96V-138, HONORABLE DAN R. BECK, JUDGE PRESIDING








 Appellants, Tana Oil and Gas Corporation and Teco Gas Marketing Company
("Tana"), bring this interlocutory appeal of an order certifying a class, represented by Garth C.
Bates and Richard G. Cernosek (the "Bates class"), in a cause involving the alleged breach of
contract regarding royalties from oil and gas leases, and breach of the implied covenant to market
the gas represented by those leases. In five points of error Tana charges the trial court with abuse
of its discretion in (1) improperly deciding the merits in a certification hearing; (2) finding the
required commonality necessary for maintenance of a class; (3) finding that common questions of
fact and law predominate; (4) finding class certification to be a superior method for adjudicating
the controversy; and (5) failing to sever the question of improper post-production charges from
the remaining controversy. We will affirm the order of the trial court.



BACKGROUND The underlying cause of action involves the alleged underpayment of royalties to
the Bates class by Tana under the terms of a field-wide gas purchase contract. Members of the
Bates class owned royalty interests in a series of Austin Chalk wells located in Fayette County,
and executed gas leases with Tana under similar or identical lease contracts. All of the gas leases
with Tana held by the Bates class contained the following identical language regarding payment
of royalties on gas production: 


As royalty, lessee covenants and agrees: . . . (b) to pay lessor for gas and
casinghead gas produced from said land (1) when sold by lessee, one-eighth [or
other appropriate percentage] of the amount realized by lessee, computed at the
mouth of the well, or (2) when used by lessee off said land or in the manufacture
of gasoline or other products, one-eighth [or other appropriate percentage] of the
amount realized from the sale of gasoline or other products extracted therefrom and
one-eighth [or other appropriate percentage] of the amount realized from the sale
of residue gas after deducting the amount used for plant fuel and/or compression.
(Emphasis added). (1)



The Bates class makes two general claims: (1) that Tana improperly deducted post-production
costs from their royalty payments; and (2) that Tana breached the implied covenant to market by
failing to get the best price possible for the gas produced by the class.

 The dispute between Tana and the Bates class involves royalty payments paid by
Tana to class members from 1992 to 1995. During this period Tana sold all of the gas production
represented by the class members' leases to Clajon Gas Company ("Clajon") under a single gas
purchase contract (the "Clajon contract"). Thus, all members of the class had identical gas royalty
payment clauses in leases signed with the same gas company, and all the gas produced by the class
members' leases was sold to a single purchaser under the terms of a single gas purchase contract. 
The Bates class argues that because the Clajon contract governs the sale of all gas represented by
the class members' royalty interests, the contract's terms affected each royalty interest owner
similarly. The class further contends that Tana improperly charged the class members for post-production compression and treating costs, and that these costs were ultimately deducted by Tana
from class members' royalty payments. The class contends that the language in each of their gas
leases, namely the clause "computed at the mouth of the well," identifies the relevant point of sale
to be at the wellhead. Thus, according to the Bates class, any costs deducted from royalties
regarding compression or treatment occurring after the gas had been brought to the surface were
inappropriate. It is undisputed that the Clajon contract called for Tana to absorb the costs for
compression and treatment of the gas to move it off the lease and prepare it for sale. Because
Tana was charged for and allegedly deducted these costs occurring off the lease from class
members' royalty payments, the Bates class believes Tana breached its contractual duty to pay
royalties based on gas production computed at the wellhead. Conversely, Tana argues that these
post-production costs were reimbursed to Tana by Clajon through a separate incentive agreement
between Clajon and a Tana subsidiary, Teco Gas Marketing Co. ("Teco"). Tana contends that
the reimbursements paid by Clajon through Teco to Tana for post-production costs made the class
members whole, and therefore, royalties were paid to the Bates class according to the entire value
of the gas sold.

 The Bates class also claims that Tana breached the implied covenant to market the
gas represented by their ownership interests because Tana failed to contract for the best price
possible, and therefore, did not act as a reasonably prudent operator. Oil and gas law in Texas
recognizes an implied covenant in gas leases such that a lessee must use due diligence to market
the oil or gas produced within a reasonable time and at a reasonable price. See Cole Petroleum
Co. v. United States Gas & Oil Co., 41 S.W.2d 414 (Tex. 1931). The behavior of a lessee in this
regard must conform to the standard of a reasonably prudent operator. See Amoco Prod. Co. v.
Alexander, 622 S.W.2d 563, 567 (Tex. 1981). The Bates class contends Tana breached this duty
because the price agreed to in the Clajon contract for their gas allegedly falls far below the market
level. Tana argues the opposite: that it did, indeed, act in a prudent manner. Furthermore, Tana
contends that any discussion regarding the implied covenant to market in this cause necessarily
involves individualized, well-specific inquiries not suitable for class certification.

 The trial court conducted a hearing to consider Bates's motion for class
certification. The court heard argument from both sides and asked each to indicate authorities and
provide evidence which would aid the court in making the correct decision. Bates produced nine
volumes of evidence accumulated through previous discovery, including the gas leases at issue and
expert testimony regarding royalty payments. Tana failed to introduce any evidence. The record
does not contain Tana's division orders sent to class members, nor does it contain any pooling unit
agreements. After making findings of fact and conclusions of law, the trial court granted Bates's
motion to certify the class. (2) Tana brings this interlocutory appeal from the trial court's order
certifying the class.


REQUIREMENTS OF CLASS CERTIFICATION

 At the certification stage, the plaintiffs have the burden of establishing their right
to maintain an action as a class action. Life Ins. Co. v. Brister, 722 S.W.2d 764, 770 (Tex.
App.--Fort Worth 1986, no writ). However, this burden is minimal; class proponents generally
are not required to make an extensive evidentiary showing in support of a motion for class
certification. Morgan v. Deere Credit, Inc., 889 S.W.2d 360, 365 (Tex. App.--Houston [14th
Dist.] 1994, no writ). Because class certification is subject to modification or decertification
throughout the trial at the discretion of the trial court, Texas law generally favors the certification
of classes at an early stage of the proceeding. Id. Texas Rule of Civil Procedure 42(a) sets out
the following prerequisites for certification of a class action:


(1) the class must be so numerous that joinder is impracticable [numerosity];


(2) questions of law or fact must be common to the class [commonality];


(3) the class representatives must have claims or defenses typical of the class
[typicality]; and


(4) the class representatives must fairly and adequately protect the interests of the
class [adequacy of representation]. 


Tex. R. Civ. P. 42(a). 

 The trial court made the following findings regarding the prerequisites of rule 42(a): 
(1) that evidence indicated at least three hundred royalty owners in the plaintiff class, thereby
meeting the numerosity requirement; (2) that the royalty owners were similarly situated because
of the identical language in the leases and the single gas purchase contract, that common questions
of fact and law existed, (3) and that damages were subject to common proof, thereby meeting the
commonality requirement; (3) that the claims of the class representatives and those of the absent
class members involved the same issues (post-production expenses and whether Tana acted as a
reasonably prudent operator), thereby meeting the typicality requirement; and (4) that plaintiffs'
counsel has experience in complex litigation and there exists no conflict of interest between the
class representatives and the absent class members, thereby meeting the adequacy of representation
requirement. Tana does not seriously challenge the trial court's findings on three of the four
prerequisites of Rule 42(a), reserving its attack for the trial court's finding of commonality. 
Because Tana's points of error do not specifically address the requirements of numerosity,
typicality, and adequacy of representation, we consider them established for purposes of this
interlocutory appeal. We will address Tana's challenge of the trial court's finding of commonality
in turn.

 A trial court may certify a class action if a plaintiff establishes all four prerequisites
in Rule 42(a), and meets at least one of the criteria for class maintenance in Rule 42(b). See Tex.
R. Civ. P. 42(b); see also Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 149 (Tex.
App.--Austin 1995, writ dism'd w.o.j.). As this class was certified under Rule 42(b)(4), this
Court must examine two additional criteria supporting class certification: "that the questions of
law or fact common to the members of the class predominate over any questions affecting only
individual members [predominance], and that a class action is superior to other available methods
for the fair and efficient adjudication of the controversy [superiority]." Tex. R. Civ. P. 42(b)(4). 
Tana challenges the trial court's findings on both the predominance and the superiority issues.


STANDARD OF REVIEW

 Our review of this cause presents a very narrow question: Did the trial court abuse
its discretion in certifying this cause as a class action? See Hutchins v. Grace Tabernacle United
Pentecostal Church, 804 S.W.2d 598, 601 (Tex. App.--Houston [1st Dist.] 1991, no writ). A
trial court has broad discretion in determining whether to grant or deny class certification. 
American Express Travel Related Servs. Co. v. Walton, 883 S.W.2d 703, 707 (Tex. App.--Dallas
1994, no writ). An appellate court must not substitute its judgment for that of the trial court. Id. 
Even if a trial court determines an issue differently than would an appellate court, the ruling does
not necessarily constitute an abuse of discretion. Dresser Indus., Inc. v. Snell, 847 S.W.2d 367,
371 (Tex. App.--El Paso 1993, no writ) (citing Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986); see also Vinson v. Texas
Commerce Bank-Houston, Nat'l Ass'n, 880 S.W.2d 820, 824 (Tex. App.--Dallas 1994, no writ). 
In determining whether a matter should be litigated as a class action, a trial court abuses its
discretion if its decision is arbitrary, unreasonable, or without reference to any guiding principles. 
Dresser Indus., 847 S.W.2d at 371. Further, a trial court abuses its discretion if it does not
properly apply the law to the undisputed facts, but does not abuse its discretion if it bases its
decision on conflicting evidence. Vinson, 880 S.W.2d at 823.

 In making its class certification decision, the trial court can consider the pleadings
and other material in the record, along with the evidence presented at the hearing. Employers
Casualty Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund, 886 S.W.2d 470,
474 (Tex. App.--Austin 1994, writ dism'd w.o.j.). We view the evidence in the light most
favorable to the trial court's action, entertaining every presumption that favors its judgment. 
Vinson, 880 S.W.2d at 823; see also Texas Dep't of Mental Health & Mental Retardation v. Petty,
778 S.W.2d 156, 160-61 (Tex. App.--Austin 1989, writ dism'd w.o.j.); Brittian v. General Tel.
Co., 533 S.W.2d 886, 889 (Tex. Civ. App.--Fort Worth 1976, writ dism'd) (citing Richardson
v. Kelly, 191 S.W.2d 857 (Tex. 1945)). 


DISCUSSION

 We now turn to Tana's specific points of error. We begin by reiterating that the
trial court enjoys wide discretion in the decision to certify a class. An order certifying a class may
not be disturbed on appeal unless a trial court has clearly abused its discretion. Dresser Indus.,
847 S.W.2d at 372. This standard creates a heavy burden for Tana to overcome. 

 At the outset, Tana attacks the order certifying the class contending that the trial
court abused its discretion by impermissibly ruling on the merits during a class certification
hearing. Tana specifically objects to the trial court's finding of facts interpreting the Clajon
contract to identify the relevant point of sale to be at the wellhead. (4) Tana argues that such an
interpretation essentially disposes of the dispute regarding post-production costs largely in the
Bates class' favor, indicating that the trial court may have pre-judged the outcome. It is
inappropriate for the trial court to try the substantive merits of a claim when conducting a
certification hearing. Brister, 722 S.W.2d at 772. However, a court must inquire into substantive
issues of law to determine whether class requirements have been met. Intratex Gas Co. v. Beeson,
960 S.W.2d 389, 398 (Tex. App.--Houston [1st Dist.] 1998, no writ). In this cause, a
preliminary interpretation of the Clajon contract was necessary to determine whether issues of
commonality would predominate over individual issues. One of the crucial issues presented at the
certification hearing was whether the single Clajon contract substantially controlled the contractual
relationship between the parties. The preliminary determination interpreting the point of sale to
be "at the wellhead" supported the finding of predominance because it eliminated many
individualized fact distinctions between class members. This inquiry was important at the
certification hearing, not for any determination of liability on the merits, but to determine if the
class members' claims were similar to the extent that consolidation into a class would be an
effective and efficient alternative. After reviewing the findings of fact and conclusions of law, the
extensive record, and documentary evidence introduced at the certification hearing, we regard the
trial court's findings as a necessary preliminary ruling and not an improper review of the merits. 
We overrule Tana's point of error in this regard. 

 Tana next disputes the trial court's finding of commonality. The threshold to
establish commonality is not high. Beeson, 960 S.W.2d at 396 (citing Jenkins v. Raymark Indus.,
Inc., 782 F.2d 468, 472 (5th Cir. 1986)). The commonality requirement for class certification
is a qualitative test, not quantitative, and a single issue common to all class members may be
sufficient. Id. The commonality requirement for class certification does not mean that all
questions, or even most questions, must be identical; rather, some common issue of fact or law
must be present in the complaints of all class members. See id.; see also Dresser Indus., 847
S.W.2d at 372. In the instant cause, all class members share identical lease language, which
largely defines the contractual relationship between Tana and each class member. Furthermore,
each class member's gas was sold by Tana under the terms of a single contract. Though not
exhaustive of the issues common in this cause, these two issues are highly significant and sufficient
to support the trial court's finding of commonality. We overrule Tana's point of error regarding
commonality.

 Tana next challenges the trial court's finding of predominance. Tana argues that,
even if sufficient issues of common fact and law exist to satisfy the Rule 42(a) requirement of
commonality, that these common issues do not predominate according to the more stringent
standard of predominance under Rule 42(b). Although the meaning of "predominate" is not clear
under the terms of the rule, it is clear that the existence of common questions in a claim is not, in
itself, sufficient for class certification and the trial court has a duty to evaluate the relationship
between the common and individual issues. Brister, 722 S.W.2d at 772. The trial court must first
identify the substantive issues of law that will control the outcome of the litigation. Beeson, 960
S.W.2d at 398 (citing Brister, 722 S.W.2d at 772). The purpose of this inquiry is not to weigh
the substantive merits of each class member's claim, but rather to determine whether the character
and nature of the case satisfies the requirements of the class action procedural rules. See id. Even
where it is not conclusively established that common issues predominate, the most efficient
approach is to certify the class, and, if necessary after the case has developed, to dissolve the class
or certify subclasses if common questions will not predominate at trial. Id.; Dresser Indus., 847
S.W.2d at 375; Brister, 722 S.W.2d at 775.

 In its findings of fact and conclusions of law, the trial court included the following
in support of its finding of predominance:

38. The common issues of fact and law predominate. The Class members' claims
emanate from various oil, gas and mineral leases and the covenants implied by
Texas law. All of the wells at issue in this lawsuit are dedicated under a single gas
purchase contract and each class member's oil, gas and mineral lease has identical
gas royalty language. The Court finds that any differences that exist among the
various Class members are irrelevant for class certification purposes.


39. Common, not individual, issues will be the focus of the parties' efforts. At
the hearing, Plaintiffs presented a common liability theory. . . . At trial it can be
reasonably expected that Plaintiffs will present a common theory of breach of
contract and breach of the implied covenant to act as a reasonably prudent operator. 
The Court finds that the questions of law and fact common to the members of the
Class predominate over any questions affecting only individual members. 



 Tana argues that the claim by the Bates class of a breach of the implied covenant
of marketability could possibly break down into individualized, well-specific inquiries into the
determination of liability. Tana contends that issues surrounding the alleged breach of the duty
to market necessarily involve individualized factors for each well or unit, including such factors
as location and quality of production. Tana further speculates that these individual inquiries will
come to predominate at a trial on the merits. Tana cites authority for the proposition that a class
certification cannot be maintained where the predominant questions enumerated will affect only
individual class members. See Amoco Prod. Co. v. Hardy, 628 S.W.2d 813, 817 (Tex.
App.--Corpus Christi 1981, writ dism'd). In Hardy, the appellate court overruled an order
certifying a class because it found that the individual issues would necessarily predominate a trial
on the merits. Id. However, the class certified in Hardy involved three different gas fields,
multiple defendants, differing pooling units, and different royalty terms under 1900 different
leases. Conversely, the Bates class involves class members having identical royalty terms in their
leases, a single defendant, and a single unifying field-wide contract under which terms the gas was
sold. 

 Tana further argues that the absence of division orders and pooling unit agreements
in the record necessarily prohibits the trial court from finding that common issues will predominate
at a trial on the merits; that the possibility of division orders and pooling unit agreements affecting
the parties' contractual arrangements bars the certification of this class. We disagree. Nothing
prevented Tana from entering these division orders and pooling unit agreements into the record
at the certification hearing. It is disingenuous to now argue their absence undermines the class. 
Though Bates carried the burden of meeting each requirement of Rule 42, including
predominance, this burden did not include introducing into evidence every conceivable document
which might affect the parties' obligations. Furthermore, division orders would be largely
irrelevant to this dispute as a matter of law. (5) 

 The trial court believed that the issues regarding the uniform lease clauses and the
single purchase contract would predominate in the determination of liability on the merits, and that
these two issues were common to all class members. The trial court sits in a better position to
assess the relative strength of the class action mechanism to do justice in this circumstance. 
Further, the trial court maintains the opportunity to address Tana's concerns through dissolution
or certification of a subclass if necessary. We will not disturb the trial court's discretionary
findings on this point. We overrule Tana's point of error regarding predominance.

 Tana also disputes the trial court's finding of superiority. A class action is the
superior method of adjudication when the benefits of class-wide resolution of common issues
outweigh any difficulties that may arise in the management of the class. Beeson, 960 S.W.2d at
399. The trial court should consider alternative procedures for disposing of the dispute and
compare these to the judicial resources and potential prejudice to absent class members involved
in pursuing the class action. Id. The trial court may consider whether: (1) class members have
an interest in resolving the common issues by class action; (2) class members will benefit from
discovery already commenced; and (3) the court has invested time and effort in familiarizing itself
with the issues in dispute. Id. Clearly class members have an interest in recovering allegedly
underpaid gas royalties. Furthermore, to the extent that individual claims may be too small to
justify the expense of litigation, the class action mechanism allows for an efficient means to
resolve these disputes. Additionally, counsel for plaintiff has already conducted extensive
discovery which would equally benefit all absent class members. And, the trial court has
familiarized itself with the nine volumes of discovery already produced. Therefore, a single trial
to adjudicate these disputes is an efficient alternative. Tana points out that few of the absent class
members have filed suit, implying that the need for a class action in this circumstance has yet to
be demonstrated. However, there is no presumption that other class members will choose not to
pursue their claims simply because they have not yet filed suit in a proposed class action. Id. at
395. In fact, certification of a class will prompt notice to be sent to these absent class members. 
See Tex. R. Civ. P. 42(c)(2). Should absent class members later choose to pursue their claims
individually, each class member has the right to opt out of the class. Id. And, should sufficient
class members choose to pursue their claims individually such that class certification no longer
seems the superior alternative, the trial court can decertify the class. Beeson, 960 S.W.2d at 396. 
We overrule Tana's point of error regarding superiority.

 Finally, should this Court affirm the trial court's certification of the Bates class,
Tana asks us, in the alternative, to sever the question of improper post-production charges from
the remaining controversy. It is properly the province of the trial court to determine whether
claims should be severed. See Tex. R. Civ. P. 41. As mentioned before, the trial court enjoys
wide discretion to dissolve the class or sever and certify any sub-issues should such action be
necessary. Tex. R. Civ. P. 42(d). However, the record fails to show that this relief was ever
asked of the trial court. We refuse to hold that the trial court has abused its discretion by not
severing these issues sua sponte. We overrule Tana's final point of error.


CONCLUSION

 The trial court did not abuse its discretion in making the preliminary finding that
the relevant point of sale for each class member was at the wellhead because this inquiry was a
necessary step in the determination of predominance. Furthermore, the trial court did not abuse
its discretion in finding commonality and predominance because the identical lease language and
single gas purchase contract common to all class members largely control the contractual
relationship between the parties. Finally, the trial court did not abuse its discretion in finding
superiority or in failing to sever because the class action mechanism, at this stage, is the most
efficient alternative, and the trial court always maintains the opportunity to decertify or sever at
a later stage should such a need be demonstrated. Having overruled Tana's five points of error,
we affirm the order of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd 

Affirmed

Filed: October 22, 1998

Publish
1. It is relevant to note that a previous attempt to certify a class of royalty owners having a
dispute with Tana failed due to an overly broad class description. Appellees amended their motion
for class certification, expressly limiting the class description to those royalty owners having gas
leases with Tana containing identical provisions concerning gas royalty payments. 
2. The trial court certified the class under the following description: "All persons who, from
1992 through August 1995, owned royalty interests in the oil, gas and mineral leases dedicated
under the March 27, 1992 gas purchase contract between Tana, as operator, and Clajon, as
purchaser with the following gas royalty language: 3(b) to pay lessor for gas and casinghead gas
produced from said land (1) when sold by lessee, [royalty fraction] of the amount realized by
lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the
manufacture of gasoline or other products, [royalty fraction] of the amount realized from the sale
of gasoline or other products extracted therefrom and [royalty fraction] of the amount realized
from the sale of residue gas after deducting the amount used for plant fuel and/or compression.
. . ."
3. The trial court, in its finding of facts and conclusions of law, included the following as
common questions of fact or law:



 Under the gas purchase contract was the point of sale at the wellhead?
 What, if any, post-production fees and charges incurred beyond the point of sale
should have been deducted from the royalty owners' gas sale proceeds?
 Did Tana conduct itself as a reasonably prudent operator in the marketing and
disposition of gas production from the Plaintiff Class' leases?
 Did Tana violate its covenant to act as a reasonably prudent operator in marketing
gas production from the Plaintiff Class' leases?
 Did Tana obtain the highest price reasonably obtainable in the area for the royalty
owners' share of gas sold?
 Should Tana have paid royalties on gas consumed off lease for plant fuel and to run
the purchaser's compressors?
 Should Tana have paid royalty on gross volumes of gas metered at the wellhead as
opposed to "net residue" volumes?
 What amount of damages, if any, was suffered by the Plaintiff Class?
4. The trial court's Findings of Facts and Conclusions of Law included the following: 
"9.  Under Section 7.1 of the gas purchase contract between Tana and Clajon, the point of
delivery and sale of gas under the contract is at the inlet of buyer's metering facilities to be located
at or near each of seller's wells. Upon delivery, title to the gas and all components pass to and
vest in the buyer. All of the gas at issue was sold at the wellhead."
5. The Natural Resources Code in relevant part provides: "the execution of a division order
between a royalty owner and lessee or between a royalty owner and a party other than lessee shall
not change or relieve the lessee's specific, expressed or implied obligations under an oil and gas
lease, including any obligation to market production as a reasonably prudent lessee. Any
provision of a division order between payee and its lessee which is in contradiction with any
provision of an oil and gas lease is invalid to the extent of the contradiction." Tex. Nat. Res.
Code Ann. § 91.402(h) (West 1993).





 this stage, is the most
efficient alternative, and the trial court always maintains the opportunity to decertify or sever at
a later stage should such a need be demonstrated. Having overruled Tana's five points of error,
we affirm the order of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd 

Affirmed

Filed: October 22, 1998

Publish
1. It is relevant to note that a previous attempt to certify a class of royalty owners having a
dispute with Tana failed due to an overly broad class description. Appellees amended their motion
for class certification, expressly limiting the class description to those royalty owners having gas
leases with Tana containing identical provisions concerning gas royalty payments. 
2. The trial court certified the class under the following description: "All persons who, from
1992 through August 1995, owned royalty interests in the oil, gas and mineral leases dedicated
under the March 27, 1992 gas purchase contract between Tana, as operator, and Clajon, as
purchaser with the following gas royalty language: 3(b) to pay lessor for gas and casinghead gas
produced from said land (1) when sold by lessee, [royalty fraction] of the amount realized by
lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the
manufacture of gasoline or other products, [royalty fraction] of the amount realized from the sale
of gasoline or other products extracted therefrom and [royalty fraction] of the amount realized
from the sale of residue gas after deducting the amount used for plant fuel and/or compression.
. . ."
3. The trial court, in its finding of facts and conclusions of law, included the following as
common questions of fact or law:



 Under the gas purchase contract was the point of sale at the wellhead?
 What, if any, post-production fees and charges incurred beyond the point of sale
should have been deducted from the royalty owners' gas sale proceeds?
 Did Tana conduct itself as a reasonably prudent operator in the marketing and
disposition of gas production from the Plaintiff Class' leases?
 Did Tana violate its covenant to act as a reasonably prudent operator in marketing
gas production from the Plaintiff Class' leases?
 Did Tana obtain the highest price reasonably obtainable in the area for the royalty
owners' share of gas sold?
 Should Tana have paid royalties on gas consumed off lease for plant fuel and to run
the purchaser's compressors?
 Should Tana have paid royalty on gross volumes of gas metered at the wellhead as
opposed to "net residue" volumes?
 What amount of damages, if any, was suffered by the Plaintiff Class?
4. The trial court's Findings of Facts and Conclusions of Law included the following: 
"9.  Under Section 7.1 of the gas purchase contract between Tana and Clajon, the point of
delivery and sale of gas under the contract is at the inlet of buyer's me