**ENTEX, A DIVISION OF NORAM ENERGY CORP., and Noram Energy Corp., Appellants,**

v.

**The CITY OF PEARLAND, Appellee.**

**No. 14–98–00475–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 15, 1999.

Macey Reasoner Stokes, Byron Daryl Bristow, Diana A. Marshall, J. Clifford Gunter, III, Houston, James W. Bradford, Angleton, for appellants.

Donald M. Hunt, Lubbock, W. Mark Lanier, Houston, John R. Gilbert, Angleton, for appellee.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

# OPINION

JOHN S. ANDERSON, Justice.

Appellants, Entex and its parent corporation, Noram Energy Corporation (collectively, "Entex"), bring this interlocutory appeal from the trial court's order certifying a class action in favor of appellee, the City of Pearland. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.1999) (authorizing interlocutory appeal). In two issues, Entex contends the trial court abused its discretion in certifying the class because Pearland did not meet the requirements for class certification. We affirm.

## BACKGROUND

The underlying action involves a dispute over the interpretation of the term, "gross receipts," contained in franchise agreements between Entex and at least 211 Texas municipalities served by Entex. Pearland is one of the municipalities that granted Entex a street franchise by ordinance, allowing Entex the use of Pearland's rights of way to distribute natural gas to Entex's customers inside the city limits in exchange for a payment of a percentage of Entex's gross receipts. Pearland sued Entex, seeking a court-supervised audit to determine whether Entex had underpaid Pearland. Pearland later moved to be certified as a class representative for other similarly situated municipalities that are paid a percentage of gross receipts by Entex. By amended petition, Pearland sought a declaratory judgment to determine the meaning of gross receipts and sought for itself and the other municipalities an audit of Entex and breach of contract damages if Entex underpaid the cities. After a hearing, the trial court certified a class of 211 municipalities and appointed Pearland as the class representative. On the same day, the trial court signed a notification order directing notice of an opt-out class action to be sent to the 211 municipalities. The notice informs the municipalities that if they want to be excluded from the class, they must opt-out of the class by completing a Request for Exclusion; if they wanted to remain a class member, they need not file anything at this time.

## STANDARD OF REVIEW

A party may complain of all matters which pertain to a class action certification by an interlocutory order. *See Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 607 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). A trial court, however, has broad discretion in determining whether to grant or deny class certification. *See Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 149 (Tex. App.-Austin 1995, writ dism'd w.o.j.). An appellate court may not substitute its judgment for that of the trial court even if it determines the issues differently than the trial court. *See id.* An appellate court may reverse a trial court's judgment only if the record shows a clear abuse of discretion. *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996). An appellate court must view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *See Sun Coast Resources, Inc. v. Cooper*, 967 S.W.2d 525, 529 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). "In applying this standard, we defer to the trial court's factual determinations so long as they are properly supported by the record while reviewing its legal determinations de novo." *See Remington Arms Co., Inc. v. Luna*, 966 S.W.2d 641, 643 (Tex.App.-San Antonio, 1998, pet denied).

A trial court abuses its discretion if it acts arbitrarily, unreasonably or without reference to any guiding principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). Further, a trial court abuses its discretion if it does not properly apply the law to the undisputed facts or makes findings not reasonably supported by the record. *See Sun Coast Resources, Inc.*, 967 S.W.2d at 529.

## FINDINGS OF FACT

▮ Entex requested written findings of fact and conclusions of law, but the trial court denied its request. Although this court emphasized the importance of findings of fact in certification proceedings in *Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 513 (Tex.App.-Houston [14th Dist.]1992, no writ), Texas law does not require the trial court to make findings of fact or conclusions of law in connection with an interlocutory appeal of a class-certification hearing. *See* TEX.R.APP. P. 28.1; *Vinson v. Texas Commerce Bank–Houston, Nat. Ass'n*, 880 S.W.2d 820, 827 (Tex.App.-Dallas 1994, no writ). "Although findings and conclusions can be helpful in assisting an appellate court in determining whether the trial court made its determination in a reasonable and principled fashion, we nevertheless review the entire record only to determine if there is some evidence to support the trial court's ultimate decision." *Id.*

## REQUIREMENTS FOR CLASS CERTIFICATION

Entex asserts two issues on appeal, in which it challenges the trial court's order in regard to every requirement for class certification. A trial court may certify a class if the class proponent satisfies the requirements of rule 42(a) and (b) of the Texas Rules of Civil Procedure. *See Sun Coast Resources, Inc.*, 967 S.W.2d at 529. To sue as the class representative, the proponent of a class action must show some facts supporting the four requirements of rule 42(a), which are as follows: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interest of the class. *See* TEX.R. CIV. P. 42(a). In addition, the proponent must meet at least one requirement of rule 42(b) to maintain a class action. *See* R. 42(b). In this case, Pear-land proceeded under rule 42(b)(4), which requires the court find common questions of law or fact to predominate over questions affecting only individual members and the class action to be the superior method of resolving the controversy. *See* R. 42(b)(4).

## RULE 42(b) CLASS MAINTENANCE

### *Superiority of Class Action*

Entex first contends the record in this case fails to show a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Entex asserts a class action cannot be a superior method for adjudicating this type of lawsuit, as a matter of law, because the suit infringes on the sovereignty of municipal class members to perform nondelegable governmental functions provided by the Texas Constitution. In the alternative, Entex attacks the manageability of the class and argues that an audit is a better means to resolve the dispute with Pearland.

Factors relevant to assessing the superiority of a class action include: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *See* TEX.R. CIV. P. 42(b)(4).

### *Constitutionality*

▮ Entex contends the interests of class members in controlling the prosecution of their own franchise ordinances render a class action suit inferior to other available methods of adjudication, as a matter of law. Entex claims each municipality must control its own franchise disputes because the administration, enforcement, and litigation of its gas utility franchise ordinances are exclusive, nondelegable governmental functions autho-

rized by Article 1, Section 17 of the Texas Constitution. By moving for class action, Entex argues, Pearland seeks to control and administer the franchise ordinances of all Texas cities served by Entex as well as its own ordinance. Entex contends that permitting the class representative, who is unrelated and unaccountable to the citizens of the municipality, usurps the municipality's right to assess a specific franchise fee from the gas utility in light of local public policy issues such as balancing the municipality's desire for revenue and the desire to attract industry or provide consumers with affordable utility rates. For example, Entex claims a judgment favorable to Pearland, in this case, will result in higher utility rates for consumers in many municipalities without action by the governing body because their franchise ordinances allow Entex to recover all or part of the franchise fees through rates charged to customers in those municipalities.

Article I, Section 17 of the Texas Constitution authorizes the Texas Legislature to grant privileges and franchises to municipal corporations, subject to control by the Legislature. *See* TEX. CONST. art. I, § 17 & interp. commentary (Vernon 1997). Accordingly, the Legislature empowered municipalities with the exclusive authority to grant to a gas utility a franchise to use the streets and alleys within the municipality and to make a statutory charge for that use. *See* TEX. UTILITY CODE ANN. § 103.002 (Vernon 1998). The Legislature also granted municipalities exclusive original jurisdiction over the rates, operations, and services of the gas utility within the municipality. *See id.* § 103.001.

■ On the other hand, a municipality cannot delegate its authority to another municipality to grant a franchise, regulate the utility's practices, or to fix the utility's rates. *See Dallas Power & Light Co. v. Carrington*, 245 S.W. 1046, 1048–49 (Tex. Civ.App.-Dallas 1922, writ dism'd) (noting that "[i]n its own sphere each municipal corporation is supreme; but it cannot invade the province of another municipality and legislate for it, whether such legislation be for its benefit or to its detriment"). Likewise, a municipality, acting within its governmental authority, also has the right to litigate the construction and enforcement of one of its ordinances. *See Ellis v. City of West Univ. Place*, 141 Tex. 608, 175 S.W.2d 396, 398 (Tex.1943); *see also Cone v. City of Lubbock*, 431 S.W.2d 639, 642 (Tex.Civ.App.-Amarillo 1968, writ ref'd n.r.e.) (holding when a municipality litigates a governmental activity, such as a zoning ordinance, it acts in a governmental capacity).

■ The Legislature, however, has not placed any restrictions on the procedure by which a municipality litigates a governmental activity, such as a franchise ordinance. *See* TEX. LOC. GOV'T.CODE ANN. §§ 51.013; 51.033; 51.075 (Vernon 1988) (stating municipality may plead or be impleaded in any court). Instead, the Legislature has given the governing body of a municipality broad discretion in the exercise of its powers and authority, subject to the express provisions of the charter in instances where they are applicable. *See* TEX. LOC. GOV'T.CODE ANN. § 51.001 (Vernon 1988) (stating governing body of a municipality may adopt an ordinance or rule that is necessary or proper for carrying out a power granted by law to the municipality); *Central Power & Light Co.*, 962 S.W.2d at 612. Although the governing body cannot delegate the right to make decisions affecting the transaction of the municipality's business, it may delegate to others the right to perform acts and duties necessary to the transaction of the municipality's business by resolution or ordinance. *See* TEX. LOC. GOV'T.CODE ANN. § 51.001; *Central Power & Light Co.*, 962 S.W.2d at 612. In the same vein, the governing body of a municipality may choose the procedure by which it litigates issues involving municipal ordinances, including participation in a class action suit.

Entex, nevertheless, claims by participating in a class action, a municipality relinquishes to the class representative and the trial court, control over the prosecution and settlement of the claims related to the franchise ordinance, another nondelegable governmental function. Entex argues that even though the rules permit members of the class to enter an appearance through counsel and to receive notice of any proposed settlement, class members are not technically parties to the litigation. Entex further contends class members have little or no input over negotiations of the terms of a settlement, even though they may lodge objections to the settlement. In many cases, Entex argues, class members may not even learn of a proposed judgment until a tentative settlement has been struck on their behalf by the defendant, class representative, and class counsel.

An unnamed class member is not a party to discovery and may lack standing to appeal a final judgment. *See* Tex.R. Civ. P. 42(f) (discovery); *See San Juan 1990–A, L.P. v. Meridian Oil Inc.,* 951 S.W.2d 159, 164 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (standing). This rule, however, does not necessarily preclude an unnamed class member from participating in the prosecution and settlement of claims if the class member is aware of the litigation and chooses to take advantage of the procedural safeguards provided by rule 42. Rule 42(c)(2) allows an unnamed class member to appear through counsel once the class is formed and subsection (e) of the same rule requires the trial court to give notice to class members if a settlement is proposed. *See* Tex.R. Civ. P. 42(c)(2) & (e). An unnamed class member to a settlement agreement may even object to the agreement and appear by counsel at a fairness hearing. *See San Juan 1990–A,L.P.,* 951 S.W.2d at 164. Moreover, should an unnamed class member desire to appeal the judgment of the trial court, it may intervene in the action. *See id.*

Because the Texas Constitution empowers the Legislature to grant franchises to municipalities, subject to the Legislature's control, and the Legislature has given municipalities broad discretion in exercise of its powers, including the right to sue in any court, a municipality may participate in a class action suit involving a governmental function such as the present case subject to action by the governing body of the municipality under the laws of this state and the municipality's charter. *See Central Power & Light, Co.,* 962 S.W.2d at 612 (holding notification of class action suit does not relieve governing body of municipality of its obligations under the municipal charter and other laws). In exercising its discretion to participate in an opt-out class action suit, the governing body of a municipality should review the pleadings and issues involved in the suit in light of its municipal charter, its own franchise ordinance, other pertinent laws, and the economic and political impact of a judgment favorable to the class, and then act accordingly by vote. Likewise, upon becoming a class member, the governing body of a municipality should actively monitor the litigation and settlement of the suit and utilize the procedures of rule 42 to protect the municipality's interests, if necessary. *But see Bloyed,* 916 S.W.2d at 953 (noting potential for conflicts of interest in class action suits).

Because a municipality acts within its discretionary power to delegate to others the right to perform acts and duties necessary to the transaction of its business by choosing to participate in a class action, the trial court did not abuse its discretion by certifying the class.

### Manageability

In the alternative, Entex argues the trial court abused its discretion in certifying the class because management of the class imposes serious difficulties on the trial court to ensure that each of the 211 municipal class members complied with its city charter and other laws in

becoming members of the class. Entex concludes, therefore, that these management difficulties make this class action an inferior method for the fair and efficient adjudication of the controversy. A class action is the superior method of adjudication when the benefits of classwide resolution of common issues outweigh difficulties that may arise in class management. *See Sun Coast Resources, Inc.*, 967 S.W.2d at 535. One factor relevant to assessing the superiority of a class action is the difficulty likely to be encountered in the management of the class. *See* Tex.R. Civ. P. 42(b)(4).

All parties agree that the governing body of each of the proposed class member municipalities must take affirmative action in conformity with its municipal charter and other laws to determine whether to participate in, or opt out of, the class action. Yet, the notice of exclusion in this case, only required potential class members to take affirmative action to opt out of the class. The notice informed potential class members that they did not need to do anything if they wished to remain in the class and that they must follow exclusion measures if they chose to opt out of the class. Entex contends this opt-out procedure does nothing to require or otherwise ensure that municipalities take the necessary steps required by their charter and other laws to authorize Pearland to pursue claims on their behalf as class representative. Entex foresees a management nightmare for the trial court in attempting to hold municipal class members accountable to the law.

In support of its argument regarding the accountability crisis, Entex entered uncontroverted expert testimony that because of the political nature of municipal government, the governing body of many municipalities never post the notice of a class action suit on their agenda and consequently never reach the merits of whether to participate in a class action suit. The expert also testified that other municipalities resolve to opt-out of a class action suit but fail to meet the technicalities of the opt-out notice. As a result of inaction or failure to meet the technical requirements of the notice, these municipalities are included in the class. Consequently, without authorization from their governing bodies, these municipalities are forced to litigate issues and are bound by a judgment that may contravene the public policy of the municipality. Entex also entered uncontroverted evidence that many municipalities in a recent class action suit dealing with analogous issues failed to take action on the class action notice and thereby became members of the suit by default.

The trial court recognized the problems with the opt-out provisions of the class action and expressed its preference for an opt-in notification of class action, which is not available in Texas. Nevertheless, the trial judge said he thought the proposed class of municipalities would receive adequate notice of the opt-out requirements and that they would comply with their constitutional provisions. In reaching this decision, the judge said he relied on *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). Without commenting on the propriety of the notices sent to the municipalities in *Central Power & Light Co.*, the Corpus Christi Court of Appeals concluded "that a properly worded class certification notice sent to all governing authorities for each municipality, including all mayors, councilpersons, commissioners, city managers, and city attorneys, will insure the appropriate actions are taken in determining whether to participate in this litigation." *Central Power & Light Co.*, 962 S.W.2d at 613.

▬▬▬ The trial court's reliance on proper notification as in *Central Power & Light* and his faith in the governing body of each municipality to act appropriately is not an abuse of discretion in spite of Entex's uncontroverted evidence. "[I]n a class action the court is the guardian of the class interest." *Bloyed*, 916 S.W.2d at 954. The trial court bears the burden to police

the proceeding to minimize conflicts of interest and, primarily, to protect absent class members. *See id.* "The trial court must assume its role as guardian of the class not only in approving class settlements, but also in deciding whether to certify a class in the first place." *Id.*"Certification is not irreversible, and the trial court may alter, amend, or withdraw class certification at any time before final judgment." *Intratex Gas Co. v. Beeson,* 960 S.W.2d 389, 393 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Therefore, should a municipality become a class member by default through its inaction or mistake in this case, the trial court may take appropriate measures to further define the class. *See Amerada Hess Corp. v. Garza,* 973 S.W.2d 667, 673 (Tex.App.-Corpus Christi 1996, writ dism'd w.o.j.) (noting court's duty to define, redefine, subclass, decertify as appropriate in response to the progression of the case from assertion to facts). Because Entex and the City of Pearland have an interest in a viable judgment, we have no doubt they will assist the trial court in ensuring that each municipality follows the proper procedures to legitimately participate in the class action suit. Accordingly, we hold the presence of management problems related to this class at the time of certification, does not, in light of trial court authority to alter, amend or withdraw certification, render the class action here an inferior method for the resolution of the controversy.

### Audit

Finally Entex claims an audit is a superior alternative procedure to a class action suit because each of the municipalities in the class has a right to an audit under state law and their municipal ordinance. Rule 42(b)(4) requires the trial court to find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Tex.R. Civ. P. 42(b)(4). In determining whether a class action is the superior method of adjudication, the trial court should consider alternative procedures for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members involved in pursuing the class action. *See Sun Coast Resources, Inc.,* 967 S.W.2d at 535.

An audit, in this case, is not a method of adjudication. An adjudication is "[t]he legal process of resolving a suit. The formal giving or pronouncing a judgment or decree in a court proceeding." BLACK'S LAW DICTIONARY, 42 (6 th ed.1990). The alternatives to class action usually involve individual adjudication, joinder, or intervention. *See Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.-Fort Worth 1986, no writ). In some circumstances, courts have considered other methods of resolving disputes, but each case involved a method of *resolving* the dispute. *See Sun Coast Resources, Inc.,* 967 S.W.2d at 536 (finding class action was superior to a voluntary claims procedure); *Central Power & Light Co.,* 962 S.W.2d at 612 (finding class action to be superior to a proceeding before the Public Utility Commission). Here, an *audit* would *not resolve* the dispute over the meaning and application of gross receipts in each franchise ordinance.

Pearland concedes it is "technically true" that any city may request an audit from Entex. Pearland further concedes that it has never requested an audit from Entex. Pearland, however, entered evidence that an voluntary audit would not necessarily resolve the dispute between Entex and the class of municipalities. John Barnidge, Pasadena's auditor, testified he felt Entex stonewalled his efforts to audit Entex's records on behalf of the City of Pasadena even though Barnidge conceded he did not follow normal accounting procedures in requesting additional information. In his final remarks, the trial judge said he recognized that the City of Pearland did not request an audit and that when the City of Pasadena tried to conduct an audit they felt Entex stonewalled the audit. The judge said,

And I recognize that the allegations the plaintiffs, although it wasn't argued, was that they would be stonewalled. And an audit request would be a useless act unless it was court ordered. And the Court doesn't have to require an act that's purportedly going to be a useless act as a condition preceding.

Because an audit, in this case, would not necessarily resolve the dispute between the class participants and Entex, it cannot be a superior alternative adjudicatory tool for absent class members. Accordingly, the trial court did not abuse its discretion in certifying the class action on the ground that Pearland failed to prove the superiority of the class action suit.

### Rule 42(a) Prerequisites

In its next issue, Entex challenges the remaining requirements of class certification under rule 42(a) of the rules of civil procedure.

### Adequacy of Representation and Typicality

■ Entex contends the trial court abused its discretion in certifying the class because Pearland did not present facts showing it met the prerequisites of typicality[1] and fair and adequate protection of the class. To sue as class representative, a party must show some facts that (1) its claims or defenses are typical of the claims or defenses of the class, and (2) it will fairly and adequately protect the interests of the class. *See* Tex.R. Civ. P. 42(a)(3),(4). The requirement to fairly and adequately protect the interests of the class has two basic components: (1) an assurance that the representatives will vigorously prosecute the class members' claims and defenses, and (2) an absence of antagonism between the class representatives and the class members. *See Weatherly*, 905 S.W.2d at 651.

1. "[T]ypicality and adequacy of representation are closely related, 'for demanding typicality on the part of the representative helps insure his adequacy of representation.'" *See*

■ Adequacy of representation is a question of fact and must be determined by reference to the individual circumstances of each case. *See id.* "In determining whether a representative is adequate to protect the interests of the class, the trial court must consider the zeal and competence of class counsel and 'the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interest of absentees.'" *Central Power & Light, Co.*, 962 S.W.2d at 609. Factors affecting this determination include: (1) adequacy of counsel; (2) potential for conflicts of interest; (3) the personal integrity of the plaintiffs; (4) the representative's familiarity with the litigation, and their belief in the legitimacy of the grievance; (5) whether the class is unmanageable because of geographical limitations; and (6) whether the plaintiffs can afford to finance the class action. *Weatherly*, 905 S.W.2d at 651. Entex challenges Pearland's adequacy on the grounds that Pearland is not a zealous class representative and municipal political considerations may create intra-class antagonism.

### Zealous Representation

■ Entex first argues that Pearland cannot adequately represent its class because Pearland's governing body cannot control the discretion of its outside counsel in prosecuting the case. Entex asserts that Pearland did not authorize its outside trial counsel, Lanier, Parker & Sullivan, P.C. ("Lanier"), to pursue claims for a declaratory judgment, damages, and attorneys fees for which Pearland obtained class certification. A class is entitled under rule 42 to more than competent counsel. *See Forsyth*, 903 S.W.2d at 152 (quoting *Weisman v. Darneille*, 78 F.R.D. 669 (S.D.N.Y.1978)). "'It must also be assured that it will have an adequate repre-

*Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 n. 6 (Tex.App.-Austin 1995, writ dism'd w.o.j.).

sentative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit and who will provide his personal knowledge of the facts underlying the complaint.' " *Id.*

In support of its claim that Pearland did not authorize Lanier to act beyond filing suit for a court-supervised audit, Entex entered into evidence the agreement between Pearland and Lanier and the minutes of the city council meeting. Both reflect that Pearland decided to pursue litigation for the limited purpose of obtaining a court-supervised audit of Entex for franchise agreement purposes only.

In response to Entex's allegation, Pearland implied that it authorized Lanier to seek the declaratory judgment, damages, and attorneys fees during a privileged executive session. In his rebuttal argument, Lanier said a city council member moved to engage his firm as outside counsel after an executive session of the city council. Lanier claimed the city charter of Pearland authorizes the Pearland city attorney to hire outside counsel with city counsel approval, and that is what happened in this case. Lanier also said that Pearland City Manager Paul Grohman initially contacted him with concerns about Entex. When Pearland asked him to look into the matter, Lanier said he agreed to represent Pearland if he could try the case as a class action.[2]

Entex, however, contends Pearland's executive session action violates the Open Meetings Act. The Open Meetings Act requires the governing body of a municipality to take a final action, decision, or vote on a matter deliberated in a closed meeting in an open meeting that is held in compliance with the notice provisions of the Open Meeting Act. *See* Tex. Gov't Code Ann. § 551.102 (Vernon 1994). "An action

taken by a governmental body in violation of this chapter is voidable." *Id.* § 551.141.

The trial court indicated that it did not have a problem with the authority of Lanier and Pearland's other lawyers to appear under the contract with Pearland because Entex did not file a civil procedure rule 12 motion requiring Lanier to show his authority to represent Pearland. The trial judge said,

> I read the city manager's deposition. I believe Mr. Lanier is authorized to act on behalf of the City of Pearland in seeking a class certification on this matter. If not, the defendants can certainly file a motion to show authority. Mr. Lanier can go back to the city council and decide whether he wants a further extended contract from the City of Pearland. I'll cross that bridge when we come to it.

The rules of civil procedure provide the proper mechanism by which Entex could contest Lanier's authority to represent Pearland. *See* Tex.R. Civ. P. 12. If Entex believes that Pearland violated the Open Meetings Act by acting in a closed, executive session, it should take appropriate action under the rules of civil procedure to resolve that issue in the trial court. *See Intratex Gas Co.*, 960 S.W.2d at 394. Entex has not taken such action in the trial court; therefore, we make no determination of whether Pearland properly authorized Lanier to sue for more than a court-supervised audit. *See* Tex.R.App. P. 33.1(a).

Accordingly, we decline to hold that Pearland's apparent failure to authorize Lanier to pursue the class action claims reflects on Pearland's ability to adequately represent the class. Because the record reflects some evidence to support the trial court's finding that Pearland would adequately and fairly protect the class, we

---

**2.** We note that argument of counsel is not evidence. However, a trial court may consider material that is not evidence in determining whether to certify a class. *See Sun Coast Resources, Inc. v. Cooper*, 967 S.W.2d 525,

539 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). "These representations of counsel, who was also an officer of the court, were sufficient 'material' to support the trial court's determination." *Id.*

find the trial court did not abuse its discretion in certifying the class on this ground.

*Intra-class Antagonism*

■ Second, Entex claims the direct relationship between the amount of franchise fees Entex pays each municipality and the gas rates that Entex charges customers in each municipality, as previously discussed, creates a serious potential for intra-class conflict. Entex entered evidence showing the potential for conflict based on differences in political goals in setting franchise rates. Entex's evidence indicated that many cities have ordinances with pass-through provisions, which provide that one-hundred percent of any increase in franchise fees Entex pays is automatically passed through to the customers in that city. In the majority of other cities, sixty percent of any increase is automatically passed through to gas customers through "purchase gas adjustment clauses" in the tariffs on file with each city. In addition, Entex asserts that the lack of interest in pursuing this type of litigation is further evidence of the differing interests of the cities.

■ "Interests of the class representative must not be antagonistic to those of the rest of the class."[3] *Employers Cas. Co. v. Texas Ass'n of School Boards Worker's Compensation Self–Ins. Fund*, 886 S.W.2d 470, 475 (Tex.App.—Austin 1994, writ dism'd w.o.j.). Speculative claims regarding potential conflicts are insufficient to show the trial court abused its discretion in finding representativeness; *see id.;* even though claims that the possibility of significant disagreement within a proposed class may support the denial of certification. *See Forsyth*, 903 S.W.2d at 151. In any case, only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *See Adams v. Reagan*, 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ).

■ Here, the potential conflict that Entex claims should defeat certification relates to the effect that a judgment favorable to Pearland might have on some class members because of the pass-through requirements in their franchise ordinances. In other words, Entex's potential conflict goes to potential damages that might be adverse to the political agenda of some municipalities, and not the core issue of the conflict, *i.e.* the definition of gross receipts and its application in an audit of Entex's records. Individual computation of damages for each class member will not prevent class certification. *See Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ). "Although the individual amount of damages may vary from class member to class member, the standard conduct of appellants is relative to all potential class members." *Amerada Hess Corp.*, 973 S.W.2d at 674.

Pearland entered evidence that no animosity existed between the City of Pearland and potential members of the class. By deposition, City Manager Paul Grohman testified that Pearland had a good relationship with class member municipalities. Although, the trial court did not directly comment on the allegation regarding the existence of intra-class conflict, the trial judge, in discussing how the court would frame the opt-out notification, commented that he believed city governments would choose to stay in or opt out of the class with "full knowledge of what they

---

3. For this reason, the analysis of typicality is often collapsed into an analysis of intra-class antagonism. *See Employers Cas. Co. v. Texas Ass'n of Sch. Boards Workers' Compensation Self–Ins. Fund*, 886 S.W.2d 470, 475 (Tex. App.-Austin 1994, writ dism'd w.o.j.). Entex does not address the requirements of typicality in its brief except in relation to adequacy of the representation. The record, however, reflects that Pearland met its burden to show typicality. *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 653 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.) (discussing the burden of the party seeking representative status).

were doing." "Full knowledge" should include an understanding of the impact a favorable judgment might have on gas rates in light of the municipalities' political agenda.

Entex's argument, that the municipalities' apparent lack of interest in individually pursuing claims against Entex is indicative of potential intra-class conflict, is also without merit. In support of its argument Entex relies on *Remington Arms Co. v. Luna*, in which the San Antonio Court of Appeals decertified a class because "[a] careful reading of the entire record suggests a lack of interest beyond the four named plaintiffs and even some indifference among them." 966 S.W.2d 641, 644 (Tex.App.-San Antonio 1998, pet. denied) This case is distinguishable from *Remington Arms*. In *Remington Arms*, "[n]o evidence was introduced before the trial court about the interest of the potential class in pursuing a class action or their ability to pursue individual claims.... Additionally, there was no evidence demonstrating the 'maturity' of the claim, litigation expense, judicial resources, or manageability." *Id.* Unlike the present case, the trial court in *Remington Arms* based its analysis upon speculation, and thus abused its discretion. *See id.*

Based on evidence entered by Pearland, the trial judge answered the question of why small municipalities did not individually pursue their actions against Entex. He recognized that

> [S]mall cities are afraid of lawyers, especially when it's going to cost them money. And its probably an unreasonable approach because they're just not going to do it. They're not going to do it until there's an opportunity to do something. And I think a class action with proper notification will tell these small communities that can't afford to take on Entex if Entex has done anything wrong.

We find the trial court did not abuse its discretion in certifying the class on the ground that Pearland did not meet its burden to show fair and adequate representation.

### Numerosity

Next, Entex contends the trial court abused its discretion in certifying the class because Pearland made no showing that the class is not so numerous as to make joinder of all members impracticable. *See* Tex.R. Civ. P. 42(a)(1). Determining whether numerosity is met is not based on numbers alone. *See Weatherly*, 905 S.W.2d at 653. The test is whether joinder of all class members would be impractical in view of the size of the class and such factors as: (1) judicial economy; (2) the nature of the class; (3) geographical locations of class members; and, (4) the likelihood that class members would be unable to prosecute individual lawsuits. *See Sun Coast Resources, Inc.*, 967 S.W.2d at 530.

Entex contends the evidence presented at the class certification hearing shows that joinder would be a practicable option in this case, if potential class members were interested in pursuing claims. At the certification hearing, Entex entered evidence that most of the potential class members had a city attorney, were aware of the litigation, and belonged to the Texas Municipal League, which monitors litigation of this type. An Entex witness testified that cities often form coalitions, pool resources, and receive assistance from the Municipal League to address these kinds of disputes. The expert also attested that cities were able to obtain quality legal representation on a contingent fee basis, if they were genuinely interested in pursuing this litigation.

Pearland, however, presented evidence that the 211 municipalities were of varying sizes and financial abilities and were spread over a wide geographic region. Each municipality has a franchise ordinance with Entex, requiring Entex to pay a percentage of gross receipts to the municipality in consideration for the franchise. Pearland emphasized the expense

of filing individual lawsuits and the difficulty that a small city might have in securing a contingency fee attorney. The trial judge agreed with Pearland, and as we previously noted, recognized the financial difficulty that municipalities faced in suing a public utility and their reluctance to take individual action. The trial judge did not find numerosity to be a problem because there were "cities scattered all over the area that have franchise contracts with Entex with the same basic language."

Because the record supports the trial judge's finding that Pearland satisfied the numerosity requirement of rule 42(a)(1), we hold the trial court did not abuse its discretion in certifying the class.

### Commonality and Predominance of Common Issues & Facts

 Finally, Entex asserts the trial court abused its discretion in certifying the class because Pearland did not show that common questions of law and fact predominate over questions affecting only individual class members as required by civil procedure rule 42(a)(2) and subsection (b)(4). In seeking class certification, the representative party must show that there are questions of law or fact common to the class. TEX.R. CIV. P. 42(a)(2). Questions common to the class are those which, when answered as to one class member, are answered as to all class members. *See Weatherly*, 905 S.W.2d at 648. "The commonality requirement does not mean that all questions of law and fact must be identical, but that an issue of law or fact exists that inheres in the complaints of all the class members." *Id.; see also Microsoft Corp. v. Manning*, 914 S.W.2d 602, 611 (Tex.App.—Texarkana 1995, writ dism'd) (noting a single common question could provide grounds for a class action).

 To maintain a class action, the trial court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. TEX.R. CIV. P. 42(b)(4). "[T]he mere existence of common questions is not sufficient for class certification; the court must evaluate the relationship between the common and individual issues." *See E & V. Slack v. Shell Oil Co.*, 969 S.W.2d 565, 569 (Tex. App.-Austin 1998, no pet.). The test to be applied in evaluating the predominance issue is whether common or individual issues will be the object of most of the efforts of the litigants and the court, and not whether common issues outnumber individual issues. *See Weatherly*, 905 S.W.2d at 648. The trial court must initially identify the substantive law issues that will control the outcome of the litigation to determine whether the character and nature of the case satisfies the requirements of the class action procedural rules, not to weigh the substantive merits of each class member's claim. *See id.* "If common issues predominate, then a judgment in favor of the class members should decisively settle the entire controversy and all that should remain is for other members to file proof of their claim." *Id.* We will discuss the commonality requirement together with the predominance requirement.

The overriding issue in this case, as the trial court clearly identified, is the definition of gross receipts, a term common to all franchise ordinances in municipalities serviced by Entex. Entex, however, contends resolution of the question of gross receipts in Pearland's ordinance will not answer the question of the meaning of gross receipts as to all class members because many of the unnamed class members' ordinances contain language qualifying the term "gross receipts." Entex argues that the term "gross receipts," taken in context of the important additional language of the various ordinances, unambiguously excludes items that Pearland seeks to include in franchise payment calculations, such as sales tax and miscellaneous service charges. Entex further argues, the construction of hundreds of different municipal ordinances, which were enacted over several decades and involve various gas companies other than Entex predomi-

nate in this litigation and defeat Pearland's assertion of commonality. Entex asserts, "if the various ordinances can be read to include these items, it is only so by disregarding the plain language of the ordinances, as well as their long history of consistent administration by utilities and cities."

The trial judge expressed concern about determining the meaning of gross receipts when all the contracts between the municipalities and Entex or its predecessors were entered into at different times. The judge questioned how Pearland could argue that no ambiguity existed in the contracts or ordinances when the material term "gross receipts" was not defined in the contract or ordinance. He resolved that conflict by relying once again on two appellate opinions from Corpus Christi and an unpublished opinion from the First Court of Appeals in Houston. The trial judge said,

> But what they basically said, as I understand it, is the Court doesn't get into determining the ambiguity of a contract when it makes an up-front determination to certify a class action.
>
> But this is a matter that needs to be taken up early. And both Corpus cases said that when there is a close question, that you should favor class certification because you can always come back and set that aside. But that's why I'm not concerned at this point at least with the law pertaining to commonality as long as that commonality is related to the meaning of gross receipts from the sales of gas or other business of the cities or I think one contract said materials.

\* \* \* \* \*

What we've got in this case, however, is we've got an undefined term. And I realize that the defendants are saying it's got to be gross receipts in relation to what? Well, that may be true. But if it's gross receipts in relation to gas sales, and its gross receipts in relation to gas sales to residential customers only, or if its gross receipts into sales of gas and equipment, it all goes back to the same issue. Do the gross receipts include matters? And I keep going back to the sales taxes because I know they're collected. And that's what was mentioned, not only in the motion, but in opening statements by both sides. It's not going to make any difference. If they're collected, they're all common. If I decide that that's not a part of it, it's not going to make any difference.... But in getting to the point of gross receipts, I'm going to have to decide which one of these cities have no business being in this case at all, and then they won't even be included in my class certification order. That's what I was driving at. And it may be that there's an agreement between y'all and I may have to resolve it as to certain cities. But the common thread is what's the meaning of gross receipts.

Entex concedes the trial court's consideration of possible ambiguity in the ordinances at the certification stage was proper, but argues that the trial court improperly relied on an appellate court opinion which admonished courts to err in favor of certification when the Texas Supreme Court recently held otherwise. Entex relies on *General Motors v. Bloyed* for the proposition that if there is any uncertainty whether class certification is proper because of substantially different individual questions of law, the trial court should not certify the class. *See* 916 S.W.2d at 959. However, *Bloyed* is not applicable in this case. *Bloyed* concerns the *settlement* of a class action where the trial court did not hold a plenary hearing on the rule 42 certification requirements and made no determination whether the class representative met the requirements of rule 42(a) and (b) even though the court determined the settlement in the class action was fair, adequate, and reasonable. *See id.* After approving the settlement, the trial court expressed " 'uncertainty as to whether a class action

could be properly certified and maintained through trial because there are potentially substantial individual questions of fact and law and obstacles to the manageability of the action on a class basis.' " *Id.* Although the supreme court affirmed the trial court's approval of the settlement agreement, it affirmed the need for a trial court to hold a plenary hearing to resolve two primary issues: (1) whether to certify the class under the rule 42 requirements and (2) whether the settlement was fair, adequate and reasonable. *See id.* The supreme court found that the two issues are separate and a finding on one cannot substitute for the other. *See id.* The supreme court chastised the lower court for expressing its uncertainty about whether the class should have been certified without conducting a hearing, when it stated, "If the trial court believed this to be the case, it should not have certified the class or approved the settlement as it did." *Id.*

We do not interpret the supreme court's chastisement in *Bloyed* to be the pronouncement of a new rule contrary to the well-established principle that "in cases where it is not conclusively established that common issues predominate, the most efficient approach is for the trial court to certify the class, and if necessary after the case is developed, to dissolve the class or certify subclasses if common questions will not predominate at trial." *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 375 (Tex. App.-El Paso 1993, no writ). We interpret the supreme court statement in the context of the entire opinion, to serve as a reminder that a trial court must first determine whether a party meets the certification requirements before approving a settlement agreement because,

> [E]ven when cases are settled before certification of the class: "Without determining that the class claims are common and typical of the entire putative class and that the class representatives and their counsel are adequate representatives, we have no assurance that the district court fully appreciated the scope and nature of the interests at stake."

*Bloyed,* 916 S.W.2d at 954 (quoting *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 797 (3d Cir.) 1995). The record, in this case, reflects that the trial judge fully appreciated the scope and nature of the interests at stake.

In the alternative, Entex asks this court to modify the broad definition of the class contained in the certification order because the order includes cities who have existing or expired municipal franchise fee ordinances, street rental contracts and/or agreements with Entex's predecessors in interest. Pearland presented no evidence that Entex assumed the liabilities for other gas companies, some of which are now defunct, when it came into existence in 1974. Entex, on the other hand, entered into evidence Lake Jackson's ordinance, which specifically acknowledges that "any and all obligations of grantor and grantee under any prior franchise, street rental contract, or similar agreement have been fully performed." Entex also showed that some ordinances even place a time limit on how far back one may challenge the payment of franchise fees.

We do not reach the issue of whether the certification order includes municipalities that might have a claim against a predecessor company for which Entex might not be liable. Entex's liability for its predecessor's interest goes to the merits of the suit, which was not before the trial court. *See Intratex Gas Co.,* 960 S.W.2d at 393. Because it appears at this stage of the proceedings that common issues predominate over questions affecting only individual class members, we hold the trial court did not abuse its discretion in certifying the class on that basis.

Because we find no abuse of discretion, we affirm the trial court's class certification order.