NUMBER 13-05-202-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

MAGIC VALLEY ELECTRIC COOPERATIVE                    Appellant,

 

                                           v.

 

CITY OF EDCOUCH,                                                  Appellee.

 

 

 

                  On appeal from the 332nd District
Court

                           of Hidalgo County, Texas.

 

 

 

            DISSENTING MEMORANDUM OPINION

 

          Before Chief Justice Valdez and Justices
Castillo and Garza

                Dissenting Memorandum Opinion by Justice
Castillo

 








Appellant, Magic Valley Electric
Cooperative ("Magic Valley"), brings this interlocutory appeal from
an order certifying a class, pursuant to section 51.014(a)(3) of the Texas
Civil Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (Vernon Supp. 2004-05).  Appellant contends that the trial court erred
in certifying the class because the class representative does not have standing
and is inadequate as a representative, and because appellee, the City of
Edcouch, Texas ("Edcouch"), has failed to satisfy the requisites of
numerosity, typicality, or predominance. 
While the majority affirms the trial court, I would reverse and remand. 

I. 
Background

Magic Valley is an electric cooperative,
owned by its membership, which services principally rural areas in south
Texas.  As populations have grown, cities
in that region have annexed new territories which, in some instances, included
customers of Magic Valley.  As a result,
Magic Valley has become subject to various ordinances and/or franchise
agreements requiring it to pay franchise taxes to those cities in which it has
customers.  








A municipality is entitled to collect a
franchise tax in exchange for permitting use of its streets, alleys, or public
ways.  See Tex. Tax. Code Ann. '182.025 (Vernon 2002).  This provision of the tax code, as enacted
prior to its amendment in 1999, provided that an incorporated city or town was
entitled to make a reasonable lawful charge for use of its streets, alleys, or
public ways, but the total charge, however designated or measured, could not
exceed two percent of the "gross receipts" of the public utility
"for the sale of gas, electric energy, or water within the city."[1]  As amended in 1999, the section now provides
that "total charges, however designated, that relate to distribution
service of an electric utility or transmission and distribution utility within
the city may not exceed the amounts as prescribed in section 33.008 of the
Texas Utilities Code."  Tex. Tax. Code Ann. '182.025 (Vernon 2002).  The utilities code provides that a
municipality may collect "a charge based on each kilowatt hour of
electricity delivered by the utility to each retail customer whose consuming
facility's point of delivery is located within the municipality's
boundaries."  Tex. Util. Code Ann. ' 33.008(b) (Vernon Supp. 2004-05).[2]  A municipality and electric utility may
mutually agree to a different level of compensation, or to a different method
for determining the amount the municipality may charge.  Id. '
33.008(f).  

Magic Valley first began paying franchise
fees to Edcouch in 1980 or 1981.  Edcouch
contends that Magic Valley incorrectly defined and calculated "gross
receipts" to include only sales of kilowatt hours of electricity, thereby
failing to include as receipts revenue from various other fees.[3]  Edcouch contends that Magic Valley thereby
violated its agreement with the city and seeks certification of a class
composed of all municipalities having franchise agreements with Magic
Valley.  








Edcouch filed suit in December 1996,
bringing claims for breach of contract, negligent misrepresentation, and fraud,
as well as an action for a declaratory judgment that class members "are
entitled to judgment . . . declaring the rights, status and legal relationship
between [Edcouch], the potential class and Magic Valley with respect to Magic
Valley's withholding proper municipal fees due and owing to Edcouch."[4]  No further action occurred in the case until
the matter was placed on the drop docket in January 2003, at which time Edcouch
moved to retain the matter on the docket.[5]  A docket control order was issued setting
trial for December 2003; an agreed motion for continuance was filed in January
2004.  In August 2004, Edcouch pursued
the class certification issues, and the class certification hearing was held
October 6, 2004.  

Evidence at the hearing established that
Magic Valley serves a five-county area in south Texas, but that the cities that
could potentially be members of the proposed class are located only in Cameron,
Willacy, and Hidalgo counties.  Evidence
further established that there are twenty-seven cities that could potentially
be members of the class.  Of these, only
eleven have a written franchise agreement with Magic Valley.  Edcouch has no written agreement with Magic
Valley, and no ordinance pertaining to its collection of franchise fees is in
evidence.  

The trial court certified the class by
order dated March 7, 2005.  In that
order, the class is defined as:








All Texas municipal corporations,
municipalities, cities, towns and villages that have or have had, existing or
expired franchise agreements that required Defendant Magic Valley Electric
Cooperative (hereinafter referred to as "MVEC") to pay various
percentages of gross receipts received by MVEC from its electrical lighting and
power sales consumed within the corporate limits of the municipalities, and
where there has not been the execution of any prior effective release of the
claims alleged in this litigation.

 

The order
continues:

The class claims, issues, or defenses are
as follows:  Defendant MVEC entered into
franchise fee agreements with all Plaintiffs to pay a certain percentage of its
"gross receipts."  Defendant
breached the agreements by various acts and procedures, accounting tricks and
acts of malfeasance and misfeasance resulting in substantial lost revenue and
harm to the Plaintiff and causing damages to Plaintiff and other similarly
situated cities.[6]

 

The order identifies common issues of
fact, including "that there was an agreement with MVEC" which
"permitted MVEC to perform specific tasks within the territory of a class
member," by which "MVEC was to pay a percentage of its gross receipts
to the class member," and that MVEC did not pay the promised amounts and
failed to include revenue received from its electrical and power sales in its
calculations.  "The issues of law
common to the class members are the court's construction of MVEC's legal
obligations, based on the franchise agreement, to pay a percentage of its
'gross receipts . . .'"  Portions of
the order certifying the class also state:








7. 
The following issues of fact and law may affect only individual
members:  Whether a written franchise fee
contract exists between some of the class member[s] and whether lack of such
contract would invite a different interpretation of the franchise fee
agreement.  This incorporates any
affirmative defenses raised by defendant against municipalities with oral
contracts.  In addition, the issues on
damages may affect individual members.  

 

8. 
The following issues will be the object of most of the efforts of the
litigants and the court:  whether MVEC's
calculations of the member's franchise fee, a method universally calculated
regardless of oral or written contract, properly took into consideration all
gross receipts.  

 

9. 
Other available methods of adjudication that exist for this controversy
[include] joinder.  However after review
of the evidence, it is deemed by this court to be impracticable and inferior to
class certification.

 

II.  Issues on Appeal

Magic Valley
appeals from this interlocutory order of class certification, raising five
issues: (1) the trial court erred in holding that Edcouch has standing to bring
the suit and to serve as class representative; and (2) Edcouch failed to
satisfy the requisites of rule 42,[7]
including (a) numerosity (issue two), (b) typicality (issue three), (c)
adequacy to serve as a class representative (issue four), and (d) predominance
and superiority as required under rule 42(b)[8]
(issue five).  

III.  Analysis

A.  Standing








Standing to sue is
a fundamental prerequisite to bringing a legitimate judicial action; it governs
a court's jurisdiction and its essential authority to hear a case.  Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443 (Tex. 1993).  It is
therefore a prerequisite to class certification and may properly be considered
in an interlocutory appeal.  M.D.
Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 710 (Tex. 2001) (holding that
standing is a threshold inquiry regardless of whether the plaintiff brings an
individual or class action).

A plaintiff must
have both standing and capacity to bring a lawsuit.  Coastal Liquids Transp., L.P. v. Harris
County Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001).  In Texas, the standing doctrine requires that
there be (1) "a real controversy between the parties," that (2)
"will be actually determined by the judicial declaration
sought."  Nootsie, Ltd. v.
Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996).  Standing focuses on the question of who may
bring an action.  M.D. Anderson,
52 S.W.3d at 708.  Without standing, a
court lacks subject matter jurisdiction to hear the case.  Tex. Ass'n of Bus., 852 S.W.2d at
443.  








A plaintiff has
standing when it is personally aggrieved." 
Nootsie, 925 S.W.2d at 661. 
A plaintiff is "personally aggrieved" when it demonstrates
that it "possesses an interest in a conflict distinct from that of the
general public, such that the defendant's action have caused the plaintiff some
particular injury."  Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560 (1992); Tex. Dep't of Transp.
v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004) (citing Hunt
v. Bass, 664 S.W.2d 323,  324 (Tex.
1984)).  "That a suit may be a class
action . . . adds nothing to the question of standing, for even named plaintiffs
who represent a class 'must allege and show that they personally have been
injured, not that injury has been suffered by other, unidentified members of
the class to which they belong and which they purport to represent.'"  M.D. Anderson, 52 S.W.3d at 708
(quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40
(1976)).  

Magic Valley
contends that Edcouch lacks standing because it does not have a contract with
Magic Valley and, therefore (1) does not fall within the class definition, and
(2) has not been "personally aggrieved," see Nootsie, 925
S.W.2d at 661, or sustained any injury as a result of breach of contract, see
M.D. Anderson, 52 S.W.3d at 710; Wilson v. Andrews, 10 S.W.3d 664,
669 (Tex. 1999).  

Nothing in the
order for class certification mandates that the franchise agreement between
Edcouch and Magic Valley be in writing. 
It is further undisputed in the evidence that Magic Valley made payments
to Edcouch, over an extended period of years, denominated in Magic Valley's own
records as payments for "franchise tax."  The dispute in issue is not whether such
payments were made, but whether they were sufficient "per the
agreement."  The absence of a
written agreement (or any accompanying ordinance) therefore does not
necessarily reflect the absence of an oral or implied agreement.  Further, the trial court specifically
contemplated and provided for potential oral agreements in its order.  








The evidence does
not preclude the existence of a contract between Magic Valley and Edcouch,
whether oral or implied.  The evidence
further reflects that Edcouch did in fact receive payments from Magic Valley
denominated as franchise taxes over an extended period of time and.  If any error in calculation of payment of the
type alleged was made, Edcouch would have sustained the same type of
particularized injury as those cities with a written agreement.  See Lujan , 504 U.S. at 560; City
of Sunset Valley, 146 S.W.3d at 646. 
I agree with the majority that Edcouch has standing to bring its causes
of action, and agree that Magic Valley's first issue should be overruled.  

B.  Rule 42 RequisitesBStandard of Review

An appellate court
reviews the propriety of the class certification in light of the claims
asserted by the named plaintiffs, but in no way evaluates the merits of those
claims.  See Intratex Gas Co. v.
Beeson, 22 S.W.3d 398, 404 (Tex. 2000) ("Deciding the merits of the
suit in order to determine . . . its maintainability as a class action is not
appropriate.").  Review of an
interlocutory appeal from a class certification order is limited to determining
whether the trial court's order constituted an abuse of discretion.  Ford Motor Co. v. Ocanas, 138
S.W.3d 447, 451 (Tex. App.BCorpus Christi 2004, no pet.); see also Henry Schein, Inc. v. Stromboe,
102 S.W.3d 675, 690‑91 (Tex. 2002). 
Review of a trial court's decision under an abuse of discretion standard
requires a determination of whether the trial court acted without reference to
any guiding rules or principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  The exercise of discretion is within the sole
province of the trial court, and an appellate court may not substitute its
discretion for that of the trial judge.  Johnson
v. Fourth Ct. App., 700 S.W.2d 916, 918 (Tex. 1985).  Rather, an abuse of discretion occurs only
when the trial court reaches a decision that is "so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law."  Id. at 917. 








However, no
automatic right exists to maintain a lawsuit as a class action.  Southwestern Ref. Co. v. Bernal, 22
S.W.3d 425, 439 (Tex. 2000) (quoting Sun Coast Res., Inc. v. Cooper, 967
S.W.2d 525, 529 (Tex. App.BHouston [1st Dist.] 1998, pet. dism'd
w.o.j.)).  Courts must take a cautious
approach to class certification and must perform a rigorous analysis to
determine whether all certification prerequisites have been met.  Bernal, 22 S.W.3d at 435; accord,
Schein, 102 S.W.3d at 690. 
"Compliance with Rule 42 must be demonstrated; it cannot merely be
presumed."  Schein, 102
S.W.3d at 691.  The Supreme Court has
expressly rejected the approach of "certify now and worry
later."  Bernal, 22 S.W.3d at
435; Schein, 102 S.W.3d at 690. 
The plaintiffs bear the burden of showing their entitlement to
certification.  See Cooper, 967
S.W.2d at 529; Glassell v. Ellis, 956 S.W.2d 676, 682 (Tex. App.BTexarkana 1997, pet. dism'd w.o.j.).  The rigorous analysis performed by the court
must include an indication of how the claims will likely be tried so that
conformity with rule 42 can be meaningfully evaluated.  Schein, 102 S.W.3d at 688.  Courts are to "go beyond the
pleadings" and understand the "claims, defenses, relevant facts, and
applicable substantive law" in order to make a meaningful determination
that the requirements of certification have been met.  Bernal, 22 S.W.3d at 435.  








Typically, under
this standard of review, the appellate court must indulge every presumption
favorable to the trial court's ruling.  Fid.
and Guar. Life Ins. Co. v. Pina, 165 S.W.3d 416, 422 (Tex. App.BCorpus Christi, 2005 no pet.) (citing
Graebel/Houston Movers, Inc. v. Chastain, 26 S.W.3d 24, 29 (Tex. App.BHouston [1st Dist.] 2000, pet dism'd
w.o.j.)).  On certification issues,
however, the appellate court is not bound by this presumption and must
independently determine whether the requirements of rule 42 have been fully
satisfied.  Pina, 165 S.W.3d at
422; Ocanas, 138 S.W.3d at 451; see also Schein, 102 S.W.3d at
691; Bernal, 22 S.W.3d at 435 (determining that actual compliance with
rule 42 "must be demonstrated; it cannot be presumed"). 

A trial court's
conclusions of law are not binding on this Court, which is free to make its own
legal conclusions.  Harlingen Irrigation
Dist. Cameron County No. 1 v. Caprock Communications Corp., 49 S.W.3d 520,
530 (Tex. App.BCorpus Christi 2001, pet. denied); Muller
v. Nelson Sherrod & Carter, 563 S.W.2d 697, 701 (Tex. Civ. App.BFort Worth 1978, no writ).  "Conclusions of law are reviewed de novo
as a question of law and will be upheld if the judgment can be sustained on any
legal theory supported by the evidence." 
Harlingen Irrigation Dist., 49 S.W.3d at 530 (citing Circle C
Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist., 981 S.W.2d 483, 485
(Tex. App.BAustin 1998, no pet.)).  A trial court's conclusions of law may not be
reviewed for factual sufficiency and may be reversed only if they are erroneous
as a matter of law.  Stable Energy,
L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex. App.BAustin 1999, pet. denied); Hofland v.
Fireman's Fund Ins. Co., 907 S.W.2d 597, 599 (Tex. App.BCorpus Christi 1995, no writ).  Incorrect conclusions of law do not require
reversal, provided that the controlling findings of fact support a correct
legal theory.  Stable Energy, 999
S.W.2d at 547.

1.  Numerosity








Magic Valley
contends in its second issue that the trial court erred in finding that the
proposed class action satisfied rule 42's requirements for numerosity.  See Tex.
R. Civ. P. 42(a)(1).  The record
reflects that the maximum potential number of cities that could be members of
the class totals twenty-seven.  The
record further reflects that all of these cities are located in south Texas, in
the counties of Cameron, Willacy, and Hidalgo. 


To meet the
numerosity requirement, Edcouch had the burden of establishing that "the
class is so numerous that joinder of all members is impracticable."  Id. 
This determination is not based on numbers alone:  

The test is whether joinder of all members
is practicable in view of the size of the class and such factors as judicial
economy, the nature of the action, geographical location of class members, and
the likelihood that class members would be unable to prosecute individual
lawsuits.

 

Chastain, 26 S.W.3d at 32 (quoting Weatherly v. Deloitte & Touche,
905 S.W.2d 642, 653 (Tex. App.BHouston [14th Dist.] 1995, writ dism'd
w.o.j.)).  








This Court
previously considered a similar set of circumstances in Rio Grande Valley
Gas Co. v. City of Pharr, 962 S.W.2d 631 (Tex. App.BCorpus Christi 1997, writ dism'd
w.o.j.).  The City of Pharr sought
certification of a class including "all Texas municipalities" having
franchise agreements with the entities sued that entitled them to payments
based on a percentage of gross receipts from gas sales.  Id. at 641.  Evidence reflected that the putative class
was composed of over thirty municipalities in the Rio Grande Valley, with the
remainder ("a clear majority of the total") located outside south
Texas and throughout the state.  Id.  Because over ninety municipalities were
involved, and because of the distance between class members, the City of Pharr
was able to demonstrate that joinder of all would be impractical.  Id. 
The City of Pharr also submitted materials in evidence demonstrating the
limited size and resources of many of the class members, in support of its
contention that many cities would not pursue their claims without the class
action vehicle.  Id. 

Similarly, in Central
Power & Light Co. v. City of San Juan, 962 S.W.2d 602 (Tex. App.BCorpus Christi 1998, pet. dism'd w.o.j.),[9]
the proposed class was composed of all Texas municipalities having municipal
fee ordinances requiring Central Power & Light to pay a percentage of gross
receipts from electrical lighting and power sales as franchise taxes.  Id. at 606.  The class consisted of at least 128 cities
located in forty-four different counties. 
Id. at 609.  This Court
concluded from the evidence presented in City of San Juan that the
numerosity element was "presumptively satisfied."  Id. 









Determining
whether or not a class is so numerous that joinder is impracticable is not
based upon numbers alone.  Rio Grande
Valley Gas, 962 S.W.2d at 641 (citing Deloitte & Touche, 905
S.W.3d at 653).  "Rather, the test
is whether joinder of all members is impracticable in view of the size of the
class and such factors as judicial economy, the nature of the action,
geographical locations of class members, and the likelihood that class members
would be unable to prosecute individual lawsuits."  Id. 
No mechanical rules exist for making this determination, and in proper
circumstances, a putative class very few in number has been found sufficient to
comply with the numerosity requirement.  Id.  Impractical does not mean impossible, but the
class representative must show that it is extremely difficult or inconvenient
to join all members of the class.  Id.
(citing Chevron U.S.A., Inc. v. Kennedy, 808 S.W.2d 159, 161 (Tex. App.BEl Paso 1991, writ dism'd w.o.j.)).  

However, in this
instance, I conclude that no such showing was made.  The only evidence in the record relating to
numerosity is that the total potential class encompasses, at most, twenty-seven
cities located in three contiguous counties in south Texas.  This does not comport with unmanageable
numbers of putative class members located in geographically diverse or distant
locales.  Further, although there is
argument, there is absolutely no evidence of the type presented in Rio
Grande Valley Gas that unrepresented municipalities possess insufficient
resources to independently pursue similar claims, or indeed that they wish to
pursue such claims.  Cf. Rio Grande
Valley Gas, 962 S.W.2d at 641.  There
is no evidence that joinder would be "impractical." 

I conclude that
Edcouch has failed to satisfy its burden to establish the requisite prong of
numerosity.  Tex. R. Civ. P. 42(a)(1), and I would sustain Magic Valley's
second issue on appeal.  

2.  Remaining Issues

Because of my
conclusion on numerosity, I do not reach other issues raised on appeal,
including those relating to typicality, adequacy, predominance, and
superiority.[10]  Tex.
R. App. P. 47.1.  








Conclusion

I conclude that
class certification is improper because the requisite prong of numerosity under
rule 42 has not been satisfied.  I would
reverse the trial court's order of class certification and remand for further
proceedings.

 

ERRLINDA CASTILLO

Justice

 

 

 

Dissenting Memorandum Opinion delivered
and filed

this the 23rd day of March, 2006.                

 

                                                              











[1] See Act of May
29, 1981, 67th Leg., R.S., ch. 389, '182.025, 1981 Tex. Gen. Laws 1490, 1716, amended
by Act of May 27, 1999, 76th Leg., R.S., ch. 405, ' 56, 1999 Tex. Gen. Laws
2543, 2623.





[2] Act of May 27, 1999,
76th Leg., R.S. Ch. 405 '15, 1999 Tex. Gen. Laws
2543, 2551 (effective 9/1/99).





[3] These may include
disconnect fees, membership fees, or service fees.  





[4] It is nevertheless
undisputed that Magic Valley collects and then passes these fees through to the
cities as revenue, retaining no portion of the fees and receiving no
compensation for this service.  The
essence of the disagreement appears to be that Magic Valley failed to include
all sources of revenue in its definition of "gross receipts." 





[5] Testimony in the record
indicates there was an informal agreement between the parties' attorneys not to
pursue the case until final resolution of all appeals in Central Power &
Light Co. v. City of San Juan, 962 S.W.2d 602 (Tex. App.BCorpus Christi 1998, pet.
dism'd w.o.j.).  However, appeals
relating to the class certification in that matter were resolved by December
1998.  A later appeal from the final order
of the Public Utilities Commission was resolved in May 2000.  See Central Power & Light v. Pub.
Util.Comm'n, 17 S.W.3d 780 (Tex. App.BAustin 2000, pet. denied) (the petition for
review was denied December 7, 2000).





[6] Although Edcouch
indicated at the class certification hearing that it could drop other claims
beyond breach of contract, it has never done so.  Although the class certification order directly
references only the breach of contract claim (while also stating that breach
occurred through "accounting tricks and acts of malfeasance and
misfeasance"), outstanding claims in the underlying suit continue to
include negligent misrepresentation and fraud. 





[7] Tex. R. Civ. P. 42(a). 





[8] Tex. R. Civ. P. 42(b).  





[9] This is the case which
ostensibly delayed progress in this suit. 
See note 5.





[10] Although I do not reach
remaining issues, I nevertheless note serious concerns about Edcouch's adequacy
to represent the class, given the extraordinary delays below in pursuing the
litigation, regardless of the professed reason, and the complete inability of
the tendered representative (as opposed to class counsel) to address serious
concerns presented about the litigation. 
The named representatives must fairly and adequately protect the
interests of the class members.  Tex. R. Civ. P. 42(a)(4).  Adequacy of representation has two elements:
(1) an absence of antagonism between the class representatives and the class
members, and (2) an assurance the representatives will vigorously prosecute the
class claims and defenses.  Graebel/Houston
Movers, Inc. v. Chastain, 26 S.W.3d 24, 32 (Tex. App.BHouston [1st Dist.] 2000,
pet. denied); E & V Slack, Inc. v. Shell Oil Co., 969 S.W.2d 565,
568 (Tex. App.BAustin 1998, no
pet.).  The adequacy inquiry serves to
uncover conflicts of interest between the named parties and the class they seek
to represent.  Amchem Prods., Inc. v.
Windsor, 521 U.S. 591, 625 (1997).  Adequacy
of representation is a question of fact that must be determined by reference to
the individual circumstances of each case. 
Entex v. City of Pearland, 990 S.W.2d 904, 915 (Tex. App.BHouston [14th Dist.]
1999, no pet.).  Factors affecting this
determination include:  (1) adequacy of
counsel, (2) potential conflicts of interest, (3) the personal integrity of the
plaintiffs, (4) the representatives' familiarity with the litigation and their
belief in the legitimacy of the grievance, (5) whether the class is
unmanageable because of geographical limitations, and (6) whether the
plaintiffs can afford to finance the class action.  Forsyth v. Lake LBJ Inv. Corp., 903
S.W.2d 146, 150 (Tex. App.BAustin 1995, writ dism'd w.o.j.) (op. on
reh'g).  Here, the representative for
Edcouch (its city manager) could not identify other putative class
members.  She stated there had only been
one meeting relating to the suit in three years, and that nothing had happened
since the matter was filed in 1996.  She
could only speculate that putative class members shared consistent interests
(no evidence of communications between and only speculation about the
possibility of existing disputes), in the face of evidence that some putative
class members had written contracts by which they were paid franchise taxes
based on 4% instead of a 2% factor, and that this higher rate might in fact be
jeopardized by the instant litigation. 
She was unable to express familiarity with the bases on which payments
made were calculated.  She had no
information relating to the circumstances of other cities or potential
conflicts of interests.  She was not even
aware of Magic Valley's pleadings or the existence of a counter-claim.  I consider this evidence indicative of
inadequate representation.